IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

HELE KU KB, LLC, a Hawaiʻi    )      CIVIL NO. 11-00183 LEK-KSC
limited liability company,    )
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
BAC HOME LOANS SERVICING, LP, )
a Texas limited partnership,  )
et al.,                       )
                              )
          Defendants.         )
_____ )


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

          Before the Court is Defendant BAC Home Loans Servicing,

LP's ("Defendant" or "BAC") Motion to Dismiss Plaintiff's First

Amended Complaint ("Motion"), filed on May 27, 2011.  Plaintiff

Hele Ku KB, LLC, a Hawai`i limited liability company

("Plaintiff") filed its memorandum in opposition on August 16,

2011, and Defendant filed its reply on September 16, 2011.  This

matter came on for hearing on September 30, 2011.  Appearing on

behalf of Defendant were Sharon Lovejoy, Esq., and Andrew

Lautenbach, Esq., and appearing on behalf of Plaintiff was Steven

Chung, Esq.  After careful consideration of the Motion,

supporting and opposing memoranda, and the arguments of counsel,

Defendant's Motion is HEREBY GRANTED IN PART AND DENIED IN PART

for the reasons set forth below.

**BACKGROUND**

Plaintiff filed the instant action on February 28, 2011 in state court. Defendant removed the action on March 21, 2011 based on diversity jurisdiction. [Notice of Removal at 4.] Defendant moved to dismiss Plaintiff's original Complaint on March 28, 2011, [dkt. no. 6,] but Plaintiff filed a First Amended Complaint on April 15, 2011 [dkt. no. 16]. In addition to Defendant, the First Amended Complaint lists various Doe Defendants as responsible parties.[1]

**I.    Factual Background**

The First Amended Complaint sets forth the following relevant factual allegations:

> 6.    At all times relevant herein, BAC held itself out to be the holder of a mortgage ("Mortgage"), dated March 30, 2004, encumbering the real property and improvements located at 811 Kai Hele Ku Street, Lahaina, Hawai`i 96761, Tax Map Key Number (2) 4-7-010-013-0000 (the "Property"), said Mortgage having been recorded in the Bureau of Conveyances of the State of Hawai`i as Regular System document number 2004-069453 . . . .
>
> 7.    At the times relevant herein, BAC published and/or caused to be published a notice ("Notice") in a newspaper of general circulation in the State of Hawai`i stating that BAC intended to foreclose the Mortgage and would hold a sale of the Property by public auction. . . .
>
> 8.    The Notice stated in pertinent part that time was of the essence and that the Property would be conveyed by BAC, as mortgagee, by mortgagee's quitclaim conveyance, provided by BAC,

---

[1] The Court will refer to BAC and the Doe Defendants collectively as "Defendants".

2

within 30 days after the auction.

     9.  Upon the scheduled date, time, and place set forth in the Notice, BAC caused the sale to be postponed to August 5, 2010.

     10.  On August 5, 2010, BAC conducted a sale of the Property, accepted the highest bid which was for SIX HUNDRED FIFTY THOUSAND AND NO/100 Dollars ($650,000.00) and made by [Plaintiff], and declared the Property sold to [Plaintiff].

     11.  On the basis of the above, a contract for the purchase and sale of the Property arose between BAC and [Plaintiff] . . . .

     12.  Following the close of the sale, [Plaintiff] tendered to BAC the required deposit and was ready, willing, and able to consummate the transaction.

     13.  On August 27, 2010, BAC filed in the Bureau of Conveyance of the State of Hawai`i, as Regular System document number 2010-125787, the Mortgagee's Affidavit of Foreclosure Under Power of Sale ("Affidavit") . . . .

     14.  After filing the Affidavit, however, BAC failed and refused without good cause to close the sale of the Property.

     15.  At all times relevant herein, [Plaintiff] has been ready, willing, and able to close the purchase and sale of the Property and has repeatedly demanded that BAC do all things reasonably necessary to consummate the transaction.

     16.  Notwithstanding the above, and despite repeated demand, BAC has failed and refused, and continues to fail and refuse, to close the sale and/or consummate the transaction.

[First Amended Complaint at pgs. 3-5.]

The First Amended Complaint alleges the following claims: Count I - breach of contract (against BAC); Count II - negligence (against BAC); Count III - fraud/fraudulent misrepresentations (against BAC); Count IV - negligent misrepresentations (against BAC); Count V - unfair methods of competition ("UMOC"), pursuant to Haw. Rev. Stat. § 480-2(e)

(against Defendants); Count VI - promissory estoppel (against BAC); Count VII - common law unfair competition (against Defendants); Count VIII - tortious interference (against the Doe Defendants); Count IX - civil conspiracy (against Defendants); Count X - aiding and abetting (against Defendants); and Count XI - punitive damages (against Defendants).

The First Amended Complaint seeks: specific performance; actual, special, compensatory, expectation, consequential, general, treble, exemplary, and/or punitive damages; injunctive relief prohibiting and/or ordering Defendants to cease and desist from engaging in unfair competition; attorneys' fees and costs; and any other appropriate relief.

## II. **Defendant's Motion**

In the instant Motion, Defendant seeks an order dismissing Counts II, III, IV, V, VI, VII, IX, X, and XI with prejudice. Defendant argues that Plaintiff's entire action is premised upon Defendant's alleged failure to comply with the terms of a sales contract. Defendant, however, emphasizes that the contract unambiguously provided:

> If title is not conveyed to Purchaser for any reason, other than Purchaser's own failure to perform, the Mortgagee's sole responsibility shall be to return the Bid funds tendered by Purchaser and the Purchaser shall have no further recourse against the Mortgagee, the agents, attorneys, services and auctioneers.

[Mem. in Supp. of Motion at 1 (quoting Complaint, ¶ 44)

("Cancellation Provision").] In Defendant's view, this provision
limits Plaintiff's recovery to a return of any money that
Plaintiff tendered.

Defendant points out that Plaintiff "is a professional
buyer of foreclosed properties. This is at least the third time
that Plaintiff's principal, Steve Lee, has been involved in a
lawsuit arising out of an alleged incomplete foreclosure sale."
[Id. (citing Lee v. HSBC Bank USA, 121 Hawaii 287, 218 P.3d 775
(2009); Hiwalani PS Holdings, LLC v. Wells Fargo Bank, N.A.,
Civil No. 09-1-1847-09).] As in the instant case, the plaintiff
in each of those cases alleged that it was the successful bidder
at a foreclosure auction and that the lender subsequently refused
to close the sale, either because the borrower cured its default
or because the lender put the foreclosure on hold while pursuing
a work out. In both cases, the court ruled that it was
appropriate for the lender to refuse to sell the property to the
plaintiff and that the plaintiff's only remedies were the return
of the deposit and interest. [Id. at 1-2 (citing Lee v. HSBC
Bank USA, 121 Hawai`i 287, 218 P.3d 775 (2009); Exhs. 2, 3).[2]]
Defendant argues that the instant case is indistinguishable from
those cases and therefore, to the extent Plaintiff's allegations

---

[2] Exhibits 2 and 3 are the motion for summary judgment
(without exhibits) and the order granting the motion for summary
judgment in Hiwalani. Defendant asks this Court to take judicial
notice of these documents. [Mem. in Supp. of Motion at 2 n.1.]

state an actionable claim, it is only for breach of contract.
Plaintiff's breach of contract claim is limited to the remedies
provided in Hawai`i law.

Defendant argues that the Court should dismiss Counts
II, III, and IV because Plaintiff cannot recover in tort for
breach of contract claims.  Further, Plaintiff's negligence claim
(Count II) fails because Defendant did not owe Plaintiff an
independent legal duty.  [Id. at 8 ("a plaintiff may not base a
tort claim on the same exact allegations forming the breach of
contract claim absent (1) the existence of an independent duty
that (2) transcends the breach of contract" (citing Francis v.
Lee Enterprises, Inc., 971 P.2d 707, 717 (Haw. 1999))).]
Defendant also argues that Plaintiff's fraud and negligent
misrepresentation claims (Counts III and IV) fail to meet Federal
Rule of Civil Procedure 9(b)'s heightened pleading standard.

Defendant contends that Plaintiff's UMOC claim (Count
V) fails because Plaintiff did not plead an antitrust injury and
Plaintiff cannot establish the other required elements.  Further,
the claim is based in fraud, and Plaintiff failed to plead fraud
with particularity.  In addition, Plaintiff cannot recover on its
common law unfair competition, which appears to rely on the
theory that Defendant misappropriated Plaintiff's Property
through misrepresentation, because it is well settled that such a
claim only "where one sells another's goods as one's own to

6

misappropriate what equitably belongs to the competitor." [Id. at 26-27 (citing Meridian Mortg., Inc. v. First Hawaiian Bank, 109 Hawai`i 35, 49, 122 P.3d 1133, 1147 (Ct. App. 2005) (quoting A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S. Ct. 837, 79 L. Ed. 1570 (1935))).]

Defendant also argues that Plaintiff's promissory estoppel claim (Count VI) is insufficiently pled because Plaintiff merely states the elements of the claim without any factual support. Plaintiff's claims for civil conspiracy and aiding and abetting (Counts IX and X) fail because they are derivative claims without a valid underlying claim. Finally, Defendant asserts that punitive damages are not an independent claim for relief, and they are not available in contract claims. Defendant therefore urges the Court to grant the instant Motion.

III. **Plaintiff's Memorandum in Opposition**

In its memorandum in opposition, Plaintiff argues that the Cancellation Provision renders Defendant liable for breach of contract if it failed to close the sale of the Property, unless the consummation of the sale became impossible through no fault of Defendant's and unless Defendant provided notice of the cancellation within thirty days. [Mem. in Opp. at 2, 4.] Defendant, however, "waited months before notifying [Plaintiff] of its decision, during which time [Plaintiff] continued to incur financing charges, fees, and other costs, and during which time

7

[Plaintiff] lost other investment opportunities." [Id. at 4 (citing First Amended Complaint at ¶ 48).] In addition, "BAC continued to make misrepresentations and supply false information to [Plaintiff] regarding its plans and intentions concerning the sale." [Id. (citing First Amended Complaint at ¶¶ 28, 35).]

Plaintiff alleges that Defendant is a potential purchaser of the properties that it forecloses upon and it uses the Cancellation Provision

> as part of a wrongful scheme to: (1) obtain the
> Property for itself; (2) collect the debt secured
> by the Mortgage as opposed to actually selling the
> Property to a competitor or outside party; and/or
> (3) induce competitors to commit funds to the
> Property, while at the same time allowing itself
> to delay, to its benefit, closing the sale
> indefinitely. [First Amended Complaint at] ¶ 43.
> This wrongful scheme results in an unfair
> advantage for BAC who is able to tie up its
> competitors' funds while, at the same time,
> providing itself with the opportunity to evaluate
> courses of action other than closing the sale,
> such as continuing to collect upon the debt
> secured by the Mortgage. [Id.] BAC's conduct
> also harms competition in general by discouraging
> outside parties from submitting competing bids on
> the properties it auctions, causing its
> competitors to lock up funds and incur expenses,
> and allowing BAC to obtain properties at
> artificially low prices. [Id. at] ¶ 54.

[Id. at 4-5.]

As to its fraud and/or negligent misrepresentation claims, Plaintiff argues that, where the claim arises from representations made in a published advertisement, all the plaintiff must do to survive a motion to dismiss is allege that

it has suffered "'out of pocket' damages, such as the expense of gas, in responding to the advertisement" and Plaintiff has done so. [Id. at 8 (citing Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai`i 309, 321, 47 P.3d 1222, 1234 (2002); First Amended Complaint at ¶¶ 26, 33, 37, 52, 53, 59, 76, and 81).] Plaintiff asserts that these claims exist separately from the breach of contract claim and that Defendant's reliance on Francis is misplaced because that case recognized that "the existence of a contract will not defeat otherwise valid claims for relief sounding in tort, such as fraud, where punitive damages are allowed in order to vindicate social policy." [Id. at 9 (quoting Francis, 971 P.2d at 715).] Plaintiff alleges that it has pled a prima facie case of fraudulent misrepresentation in paragraphs 28-33 of the First Amended Complaint, and of negligent misrepresentations in paragraphs 35-37. Plaintiff emphasizes that the fraud pleading requirements do not apply to claims for negligent misrepresentations. Even if they did apply, the allegations in the First Amended Complaint are sufficient.

As to its negligence claim, Plaintiff agues that Hawai`i law recognizes a general duty to refrain from acting in a way that may foreseeably harm others.

> [Plaintiff] alleges that BAC owed to it a duty to
> use reasonable care in connection with the auction
> and sale of the property, including BAC's
> investigation into the legality and validity of
> the foreclosure sale, its provision of Notice to
> the public, its conducting of the Auction, its

> post-auction communications and dealings with
> [Plaintiff], and its taking the proper steps to
> close the sale.  [First Amended Complaint at] ¶
> 24.  [Plaintiff] further alleges that BAC breached
> this duty of reasonable care and, as a result,
> caused [Plaintiff] to suffer injury and incur
> damages.  <u>See</u>, [<u>id.</u> at] ¶¶ 24- 26.

[<u>Id.</u> at 10.]  Plaintiff alleges that it was foreseeable that

members of the public that were interested in purchasing the

Property and that responded to the Notice, in particular the

successful bidder, would be harmed by Defendant's negligence.

Plaintiff also asserts that its UMOC claim is properly

pled.  Plaintiff has pled all of the required elements and has

alleged the nature of the competition.  Plaintiff argues that

Rule 9(b) does not require it to plead the identities of the

individual BAC personnel who engaged in the fraudulent scheme and

exactly what statements they made.  Further, that information

would be in Defendant's possession.

Plaintiff notes that Defendant concedes that the First

Amended Complaint alleges the elements of promissory estoppel.

Plaintiff argues that there are sufficient factual allegations to

support this claim.  [<u>Id.</u> at 21-22 (quoting First Amended

Complaint at ¶¶ 8, 10, 12, 35, 37, 58.)]

Plaintiff argues that the common law unfair competition

claim is sufficient because Plaintiff has alleged a colorable

claim that it was the equitable owner of the Property and that

Defendant misappropriated Plaintiff's property.

Plaintiff also asserts that the civil conspiracy and aiding and abetting claims are sufficiently pled because they relate to the prior claims. In addition, Plaintiff contends that there is no case law prohibiting a plaintiff from setting forth a request for punitive damages in a separate count for emphasis, as long as punitive damages would otherwise be justified.

Finally, Plaintiff argues that, if the Court dismisses any of Plaintiff's claims, the Court should grant leave to amend.

## IV. **Defendant's Reply**

In its reply, Defendant reiterates its arguments from the Motion. In addition, Defendant points out that Plaintiff's alleged tort damages are the same as its alleged contract damages, indicating that any claim for damages based on the same alleged misrepresentations are encompassed by the contract. Defendant also argues that <u>Zanakis-Pico</u> does not support Plaintiff's position because no contract was ever formed in that case and therefore <u>Francis</u> does not apply. To the extent that Plaintiff's alleged damages were foreseeable by the parties, they would be recoverable as consequential damages for the breach of contract claim.

Defendant argues that the instant case is distinguishable from <u>Smallwood v. NCsoft Corp.</u>, 730 F. Supp. 2d 1213, 1231-32 (D. Hawai`i 2010) (ruling that the Rule 9(b) pleading standard does not apply to negligent misrepresentation

11

claims), because Plaintiff's negligent misrepresentation claim in the present case does sound in fraud. The claim is therefore subject to Rule 9(b)'s heightened pleading requirements.

Defendant argues that Plaintiff's UMOC claim fails to allege an antitrust injury because it merely claims that Plaintiff and Defendant are competitors seeking to purchase the same product and that Defendant's conduct is resulting in a reduction in real estate prices. This conduct would then benefit customers, and therefore Plaintiff has failed to plead the nature of the competition at issue.

As to the promissory estoppel claim, Plaintiff fails to allege any promise, other than the obligations under the purported contract, or that it detrimentally relied on the promise.

**<u>STANDARD</u>**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

> Under Rule 12(b)(6), review is generally limited to the contents of the complaint. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. <u>See</u> <u>Keams v. Tempe Tech. Inst., Inc.</u>, 110 F.3d 44, 46 (9th Cir. 1997); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial

notice-without converting the motion to dismiss into a motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003). On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554, 127 S. Ct. 1955).

<u>Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.</u>, 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." <u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

## DISCUSSION

## I.   Overlapping Contract and Tort Claims

Defendant first argues that this Court should dismiss Count II (negligence), Count III (fraud/fraudulent misrepresentations), and Count IV (negligent misrepresentations) without leave to amend because, "[a]s the Hawai`i Supreme Court

determined in <u>Francis v. Lee Enterprises, Inc.</u>, a plaintiff may not base a tort claim on the same exact allegations forming the breach of contract claim absent (1) the existence of an independent duty that (2) transcends the breach of contract." [Mem. in Supp. of Motion at 8 (citing 971 P.2d 707, 717 (Haw. 1999)).] Defendant's reliance on <u>Francis</u> is misplaced.

In that case, the Hawai`i Supreme Court held "Hawai`i law will not allow a **recovery** in tort, including a **recovery** of punitive damages, in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." <u>Francis v. Lee Enterprises, Inc.</u>, 89 Hawai`i 234, 244, 971 P.2d 707, 717 (1999) (emphases added). <u>Francis</u> prohibits a double recovery; it does not prohibit a plaintiff from alleging a contract claim and tort claims based on the same facts as an alternate theory of liability. For example, the Hawai`i appellate courts have held that "a non-client may sue an attorney under either a negligence or contract theory if the non-client is entitled to a standard of care from the attorney, but may not recover under both theories for the same damages." <u>Porter v. Hu</u>, 116 Hawai`i 42, 59, 169 P.3d 994, 1011 (Ct. App. 2007) (discussing <u>Blair v. Ing</u>, 95 Hawai`i 247, 259 & n.10, 21 P.3d 452, 464 & n.10 (2001)).

Similarly, in the instant case, Plaintiff, the would-be purchaser of the Property, may allege both contract and

negligence claims against Defendant if Defendant owed Plaintiff a duty of care. Plaintiff, however, cannot ultimately recover under both theories. The Court rejects Defendant's argument that the Court must dismiss Counts II, III, and IV merely because they are based on the same factual allegations as Count I, Plaintiff's breach of contract claim.

Defendant also argues the Court must dismiss Counts II, III, and IV because the Cancellation Provision is valid and enforceable and precludes Plaintiffs' claims. The Court, however, finds that the enforceability of the Cancellation Provision requires the consideration of factual matters that are beyond the scope of a motion to dismiss and are more appropriate in a motion for summary judgment.

The Court therefore turns to each of the counts in the Complaint to determine whether each states a claim upon which relief can be granted.

## II. **Negligence**

Count II alleges that BAC breached its duty of care in the auction and sale of the Property and that such breach injured Plaintiff. [First Amended Complaint at ¶¶ 24-26.] In the instant Motion, BAC argues that the Court must dismiss Count II because Plaintiffs have not pled any facts that would support a legally recognized duty. See White v. Sabatino, 415 F. Supp. 2d 1163, 1173 (D. Hawai`i 2006) (stating that one of the required

elements of a negligence claim is "[a] duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks" (quoting Ono v. Applegate, 62 Haw. 131, 137, 612 P.2d 533, 538-39 (1980)).

Plaintiff responds that BAC owed a general duty of care to avoid foreseeable harm to others. [Mem. in Opp. at 10.] This Court agrees that Hawai`i law recognizes such a duty. See, e.g., Taylor-Rice v. State, 91 Hawai`i 60, 71, 979 P.2d 1086, 1097 (1999) ("This court has, in a variety of contexts, repeatedly recognized a duty owed by all persons to refrain from taking actions that might foreseeably cause harm to others." (citations omitted)); Touchette v. Ganal, 82 Hawai`i 293, 301-02, 922 P.2d 347, 355-56 (1996) ("In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable [person] to protect them against an unreasonable risk of harm to them arising out of the act." (quoting Restatement (Second) of Torts § 302 comment a (1965))). As this Court stated in considering a motion to dismiss a negligence claim in another case:

> conclusory allegations that a defendant harmed a plaintiff will not suffice, but "detailed factual allegations" are not required. Iqbal, 129 S. Ct. at 1949-50. Importantly, Iqbal stated that the judicial determination of a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at

16

> 1950.  Plaintiff's allegations, as scant as they
> may be, are sufficient to overcome Tanuvasa's
> challenge at this time.

_Thourot v. Tanuvasa_, Civil No. 11–00032 LEK–KSC, 2011 WL 2746334,

at *8 (D. Hawai`i July 11, 2011) (footnote omitted).[3]  Similarly,

in the instant case, this Court also concludes that the

allegations of Plaintiff's negligence claim are sufficient to

withstand a motion to dismiss at this time.  Defendant's Motion

is therefore DENIED as Count II.

## III. __Fraud/Fraudulent Misrepresentations__

Count III alleges a fraud/fraudulent misrepresentation

claim against BAC.  It alleges, in pertinent part:

---

[3] In _Thourot_, this Court drew a distinction between the
facts of that case and the facts of _Iqbal_.  That distinction is
also applicable in the instant case.

> The instant case is distinguishable from the
> matter before the Supreme Court in _Iqbal_.  The
> petitioners in _Iqbal_ were two high-ranking
> government officials, the former Attorney General
> and the former Director of the Federal Bureau of
> Investigation.  They were two among 53 defendants
> in the action.  The 21 claims for relief focused
> not on the decision to arrest and detain, but
> rather on the conditions of confinement, and
> particularly the treatment by the jailers — not
> the former Attorney General and the former
> Director of the Federal Bureau of Investigation.
> _Iqbal_, 129 S. Ct. at 1943–44.  Further, _Iqbal_ was
> concerned with the potential burden, distraction
> and interference with duties the pending
> litigation could impose on two high-ranking public
> officials, as well as the expense of discovery
> leading to defendants settling frivolous suits.
> _Id._ at 1950.  Such concerns are not as great in
> the instant case involving a single incident
> between Plaintiff, the HPD, and a single officer.

2011 WL 2746334, at *8 n.1.

28.  At the times relevant herein, BAC made false representations to [Plaintiff] that it would sell the Property to the highest bidder at auction as set forth in the Notice, that the Property was legally and properly subject to foreclosure sale, that BAC had accepted [Plaintiff]'s bid on the Property at the auction, that the Property had been sold to [Plaintiff] at the auction, and that BAC would close the sale of the Property.  Said false representations were made, communicated, and/or contained in the Notice, at the August 5, 2010 auction, in the Affidavit, and during post-auction communications between BAC and [Plaintiff].  BAC continued to make false representations after filing the Affidavit.

29.  In reliance on said false representations, [Plaintiff] arranged to obtain financing for which [Plaintiff] was required to pay periodic finance charges and/or fees to have the funds available.  [Plaintiff] informed BAC of the periodic finance charges and/or fees that [Plaintiff] was paying to have the funds to purchase the Property available.  BAC continued to knowingly falsely represent to [Plaintiff] that BAC would close the sale of the Property, knowing that [Plaintiff] would rely on those representations and continue to pay the periodic finance charges and/or fees to keep the funds for the purchase of the Property available.

30.  BAC made said false representations with knowledge of their falsity or without knowledge of their truth or falsity.

31.  BAC made said false representations in contemplation of [Plaintiff]'s reliance upon said false representations.

32.  In making the misrepresentations, BAC acted wantonly, willfully, maliciously, intentionally, and/or with great indifference to the damages said misrepresentations would cause [Plaintiff] to suffer.

[First Amended Complaint at pgs. 7-8.]

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

18

Rule 9(b) requires that a party make particularized allegations of the circumstances constituting fraud. <u>See</u> <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir. 2010).

In the complaint, a plaintiff "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); <u>see also</u> <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind – or scienter – of the defendants may be alleged generally." (citation omitted)); <u>Walling v. Beverly Enters.</u>, 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6)[.]" <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted. <u>Twombly</u>, 550 U.S.

at 563 n.8 (citation omitted).

In addition, the <u>Iqbal</u> plausibility standard applies to fraud claims, that is, the facts must be plead with plausibility as well as particularity.

> To satisfy Rule 9(b), a pleading must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false."
> . . . [C]laims of fraud or mistake . . . must, in addition to pleading with particularity, also plead plausible allegations.

<u>Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (citations omitted) (some alterations in original).

The First Amended Complaint refers generally to "false representations [that] were made, communicated, and/or contained in the Notice, at the August 5, 2010 auction, in the Affidavit, and **during post-auction communications between BAC and [Plaintiff]**" and to "false representations [that BAC made] after filing the Affidavit." [First Amended Complaint at ¶ 28.] Plaintiff's general allegations are not sufficient to identify the who, what, when, where, and how of the alleged misrepresentations, nor do they identify what specifically was misleading about Defendant's statements. Count III fails to satisfy the heightened pleading standards for fraud claims, and the Court must dismiss Count III. The Court, however, finds that it is arguably possible for Plaintiff to cure the defects in its

fraud/fraudulent misrepresentation claim through amendment. The
Court therefore GRANTS Defendant's Motion insofar as the Court
DISMISSES Count III, but the Court DENIES Defendant's Motion
insofar as the dismissal of Count III is WITHOUT PREJUDICE.

## IV. <u>Negligent Misrepresentations</u>

Defendant also argues that the Court should dismiss
Count IV (negligent misrepresentation) because it is a fraud
based claim and Plaintiff failed to plead Count IV with the
requisite particularity. [Mem. in Supp. of Motion at 11.]

This district court, however, has recognized that:

> A negligent misrepresentation claim does not
> require intent, and accordingly is not subject to
> Rule 9(b). <u>See</u> <u>Peace Software[, Inc. v. Hawaiian</u>
> <u>Electric Company, Inc.</u>, No. 09-00408], 2009 WL
> 3923350 at *8 [(D. Haw. Nov. 17, 2009)]; <u>see also</u>
> <u>Bush v. Rewald</u>, 619 F. Supp. 585, 608 (D. Haw.
> 1985) (holding that "[s]ince the common-law
> negligent misrepresentation count need not be pled
> with particularity under Rule 9(b), defendants'
> motion to dismiss [was] denied")[.]
>
> The Court is also aware that there are cases
> in this Circuit asserting that "in the Ninth
> Circuit, negligent misrepresentation claims are
> subject to heightened pleading requirements under
> Rule 9(b)." <u>See</u> <u>Wolph v. Acer America Corp.</u>, No.
> C 09-01314 JSW, 2009 WL 2969467 at *5 (N.D. Cal.
> Sept. 14, 2009). However, as Judge Mollway
> explained in <u>Peace Software</u>, those cases all
> appear to be based on California law, in which the
> elements for a negligent misrepresentation claim
> are similar to the elements for fraud. <u>Peace</u>
> <u>Software</u>, 2009 WL 3923350 at *6. Based upon a
> review of Hawai`i case law, Judge Mollway
> concluded that "the Hawaii Supreme Court does not
> appear to have been equating negligent
> misrepresentation with fraud." <u>Id.</u> This Court
> agrees.

<u>Smallwood v. NCsoft Corp.</u>, 730 F. Supp. 2d 1213, 1231-32 (D. Hawai`i 2010) (some citations omitted). This Court agrees with the rulings by the other judges in this district to address this issue, and this Court rejects Defendant's argument that the Rule 9(b) standard applies to a negligent misrepresentation claim. Further, this Court disagrees with Defendant's contention that Plaintiff's negligent misrepresentations claim is based on allegations of fraud. Plaintiff alleges that Defendant negligently communicated **false** information; Plaintiff does not allege that Defendant negligently communicated **fraudulent** information.

The elements of a negligent misrepresentation claim are: "'(1) false information [is] supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation.'" <u>Zanakis-Pico v. Cutter Dodge, Inc.</u>, 98 Hawai`i 309, 321, 47 P.3d 1222, 1234 (2002) (alteration in <u>Zanakis-Pico</u>) (quoting <u>Blair v. Ing</u>, 95 Hawai`i 247, 269, 21 P.3d 452, 474 (2001) (citing <u>Kohala Agriculture v. Deloitte & Touche</u>, 86 Hawai`i 301, 323, 949 P.2d 141, 163 (App. 1997); Restatement (Second) of Torts § 552 (1977))). The Hawai`i Supreme Court also stated:

> Plaintiffs may recover the pecuniary losses caused
> by their justifiable reliance on a negligent

misrepresentation.  *See* <u>State ex rel. Bronster v. United States Steel Corp.</u>, 82 Hawai`i 32, 919 P.2d 294 (1996) (recognizing that "pecuniary losses are recoverable in a claim for negligent misrepresentation"); <u>Chun v. Park</u>, 51 Haw. 462, 468, 462 P.2d 905, 909 (1969) (approving "out of pocket" expenses incurred in connection with the purchase of a property in reliance upon a negligent misrepresentation).  <u>But see</u> <u>City Express, Inc. v. Express Partners</u>, 87 Hawai`i 466, 469, 959 P.2d 836, 839 (1998) (holding that "in the context of construction litigation regarding the alleged negligence of design professionals, a tort action for negligent misrepresentation alleging damages based purely on economic loss is not available to a party in privity of contract with a design professional[]").

Although such pecuniary losses will generally stem from a completed transaction, they need not.  According to the Restatement (Second) of Torts, the damages recoverable for a negligent misrepresentation are:

> those [damages] necessary to compensate the plaintiff for the pecuniary loss to him [or her] of which the misrepresentation is a legal cause, including
>     (a) the difference between the value of what he [or she] has received in the transaction and its purchase price or other value given for it; and
>     (b) *pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.*

Restatement (Second) of Torts § 552B (1977) (emphasis added).  We agree.  Thus, pecuniary losses stemming from an attempt to conduct a transaction in reliance upon information negligently supplied are, assuming the plaintiff has established the other elements of the tort, sufficient to support a claim for negligent misrepresentation.

<u>Id.</u> at 321-22, 47 P.3d at 1234-35 (alteration and emphasis in <u>Zanakis-Pico</u>).

In light of the foregoing precedent from the Hawai`i state courts, this Court finds that the allegations of the First Amended Complaint, discussed *supra*, state a plausible claim for negligent misrepresentation.  Defendant's Motion is therefore DENIED as to Count IV.

**V.     UMOC**

Defendant next argues that Count V (UMOC) fails because: the claim is precluded by <u>Lee v. HSBC Bank USA</u>, 121 Hawai`i 287, 218 P.3d 775 (2009); Plaintiff did not adequately plead the elements of a UMOC claim; and, to the extent that it is based on fraud, Plaintiff failed to plead the claim with the required particularity.  [Mem. in Supp. of Motion at 13-24.]

**A.     Lee v. HSBC Bank**

In <u>Lee v. HSBC Bank</u>, the Hawai`i Supreme Court considered the following certified question from this district court: "Where a mortgagor cures its default prior to a foreclosure proceeding pursuant to [Hawai`i Revised Statutes (HRS)] § 667-5, but an auction inadvertently goes forward, is a valid agreement created entitling the high bidder at the auction to lost profits?"  121 Hawai`i 287, 288, 218 P.3d 775, 776 (2009) (alteration in original).  The supreme court held that "an agreement created at a foreclosure sale conducted pursuant to HRS section 667-5 is void and unenforceable where the foreclosure sale is invalid under the statute and that the high bidder at

such a sale is entitled only to return of his or her downpayment plus accrued interest."  Id. at 296, 218 P.3d at 784.

Lee is inapplicable to the instant case because of a critical difference in the facts of Lee and the facts in this case.  In Lee, the foreclosure sale was invalid because, at the time of the sale, the owners of the property were no longer in default and the defendant therefore could not invoke the mortgage's power of sale provision.  Id. at 291, 218 P.3d at 779. In the present case, the First Amended Complaint alleges that Defendant continued to negotiate loan modification with the borrower even after Plaintiff successfully bid on the Property at the foreclosure auction, and Defendant eventually refused to convey the Property to Plaintiff as a result.  Thus, at this stage of the case, this Court cannot conclude that Lee v. HSBC Bank USA precludes Plaintiff's UMOC claim.

> **B.    Elements of a UMOC Claim**

Haw. Rev. Stat. § 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Section 480(e) states: "Any person may bring an action based on unfair methods of competition declared unlawful by this section."

Haw Rev. Stat. § 480-13(a) states, in pertinent part:

> any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:
>     (1) May sue for damages sustained by the

25

> person, and, if the judgment is for the
> plaintiff, the plaintiff shall be awarded a
> sum not less than $1,000 or threefold damages
> by the plaintiff sustained, whichever sum is
> the greater, and reasonable attorney's fees
> together with the costs of suit; provided
> that indirect purchasers injured by an
> illegal overcharge shall recover only
> compensatory damages, and reasonable
> attorney's fees together with the costs of
> suit in actions not brought under section
> 480-14(c); and
> (2) May bring proceedings to enjoin the
> unlawful practices, and if the decree is for
> the plaintiff, the plaintiff shall be awarded
> reasonable attorney's fees together with the
> costs of suit.

The Hawai`i Supreme Court has stated that there are "three elements essential to recovery under HRS § 480-13: (1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." Davis v. Four Seasons Hotel Ltd., 122 Hawai`i 423, 435, 228 P.3d 303, 315 (2010) (footnote and citations omitted).

Plaintiff has only identified Defendant's alleged conduct that Plaintiff contends violated Chapter 480. [Mem. in Opp. at 15-17; First Amended Complaint at ¶¶ 38-57.] Plaintiff has not identified which provision of Chapter 480 Defendant's conduct allegedly violated. Further, the Hawai`i Supreme Court has held:

> "the elements of (1) resulting injury to business
> or property and (2) damages" are "two distinct
> elements" of HRS § 480-13(a), and went on to note
> that:
>
> Indeed, federal case law has interpreted the

26

"injury to business or property" language of
section 4 of the Clayton Act as a causation
requirement, requiring a showing of
"antitrust injury." **Plaintiffs must prove .
. . [an] injury of the type the antitrust
laws were intended to prevent[, one] . . .
that flows from that which makes defendants'
acts unlawful.** The injury should reflect the
anticompetitive effect either of the
violation or of anticompetitive acts made
possible by the violation. It should, in
short, be the 'type of loss' that the claimed
violations . . . would be likely to cause."

Also known as the "fact of damage"
requirement, the antitrust plaintiff need not
prove with particularity the full scope of
profits that might have been earned.
Instead, it requires a showing, with some
particularity, of actual damage caused by
anticompetitive conduct that the antitrust
laws were intended to prevent.

[Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe
Transp. Co., Inc., 91 Hawai`i 224, 254 n.31, 982
P.2d 853, 883 n.31 (Haw. 1999)] (internal
citations omitted; ellipses and brackets in
original).

Davis, 122 Hawai`i at 439, 228 P.3d at 319 (some citations

omitted) (some alterations in original) (emphasis added). Thus,

in failing to identify the specific statute, or statutes, that

Defendant's conduct allegedly violated, Plaintiff has also failed

to allege that its injury is the type of injury that the

antitrust laws were intended to prevent. Plaintiff has therefore

failed to allege a plausible UMOC claim, and this Court must

dismiss Count V.

C.   **Leave to Amend**

27

This Court finds that it is possible to amend Plaintiff's claim to cure the deficiencies identified in this Order. In so finding, this Court rejects Defendant's argument that, under the facts of this case, Plaintiff cannot allege an antitrust injury because an antitrust injury requires "harm to the process of competition and consumer welfare, not harm to individual competitors." [Reply at 8 (citing Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 488, 97 S. Ct. 690, 697 (1977); Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 223, 113 S. Ct. 2578, 2588 (1993); Cascade Health Solutions v. PeaceHealth, 515 F.3d 883,902 (9th Cir. 2008)) (emphasis in original).] Based on Plaintiff's First Amended Complaint, Memorandum in Opposition, and counsel's arguments during the hearing on the Motion, Plaintiff does not merely allege that Defendant has unfairly gained an advantage over Plaintiff as Defendant's competitor. Plaintiff alleges that Defendant engaged in a scheme in which it: offered the Property for sale at a foreclosure auction; required the highest bidder to pay a substantial deposit; delayed the completion of the sale beyond the time period originally specified; and ultimately refused to complete the sale. The scheme did not merely injure Plaintiff as the successful bidder in this instance, but it also allegedly discourages other persons or entities that would potentially have bid in Defendant's other foreclosure auctions from participating

because they do not want to commit substantial funds for a deposit when there is a significant risk that, after a significant delay, Defendant will not complete the sale. Thus, by discouraging other bidders that would compete against Defendant, this practice allegedly allows Defendant the opportunity to purchase properties at a reduced price so that it can realize a greater profit on resale.

The Court will therefore allow Plaintiff the opportunity to amend its UMOC claim. In addition to the defects noted *supra*, the Court emphasizes that, to the extent that Plaintiff's UMOC claim is premised on allegations of fraud, the amended claim must meet the heightened pleading standards for fraud claims. The Court GRANTS Defendant's Motion insofar as the Court DISMISSES Count V, but the Court DENIES Defendant's Motion insofar as the dismissal of Count V is WITHOUT PREJUDICE.

## VI.  Promissory Estoppel

Defendant also argues that Count VI (promissory estoppel) is insufficiently pled. [Mem. in Supp. of Motion at 24-26.]

The Hawai`i Supreme Court has stated that:

[T]he four elements of promissory estoppel are:
    (1) There must be a promise;
    (2) The promisor must, at the time he or she
        made the promise, foresee that the
        promisee would rely upon the promise
        (foreseeability);
    (3) The promisee does in fact rely upon the
        promisor's promise; and

> (4) Enforcement of the promise is necessary
>      to avoid injustice.
>
> <u>In re Herrick</u>, 82 Hawai`i [329,] 337-38, 922 P.2d
> [942,] 950-51 [(1996)] (quoting 4 R. Lord, A
> Treatise on the Law of Contracts by Samuel
> Williston § 8:5, at 85-95 (4th ed. 1992)).  The
> "essence" of promissory estoppel is "detrimental
> reliance on a promise."  <u>Ravelo [v. County of
> Hawai`i]</u>, 66 Haw. [194,] 199, 658 P.2d [883,] 887
> [(1983)].
>
> This court has defined a "promise" for
> purposes of promissory estoppel to be "a
> manifestation of intention to act or refrain from
> acting in a specified way, so made as to justify a
> promisee in understanding that a commitment has
> been made."  <u>In re Herrick</u>, 82 Hawai`i at 338, 922
> P.2d at 951 (quoting Restatement (Second) of
> Contracts § 2(1)) (internal quotation marks
> omitted).  More specifically, a "promisor
> manifests an intention" if he or she "believes or
> has reason to believe that the promisee will infer
> that intention from his [or her] words or
> conduct."  <u>Id.</u> (quoting Restatement (Second) of
> Contracts § 2(1) comment b) (internal quotation
> marks omitted).  In <u>Ravelo</u>, a couple detrimentally
> relied on the County Police Department's letter
> stating that the husband had been accepted as a
> police recruit.  This court held that the County
> "could have anticipated the assurance of
> employment at a definite time would induce a
> reaction of that nature [i.e., couple quitting
> jobs on the island of Oahu and preparing to move
> to the island of Hawai`i]."  <u>Ravelo</u>, 66 Haw. at
> 199, 658 P.2d at 887.

<u>Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.</u>, 100 Hawai`i 149,
164-65, 58 P.3d 1196, 1211-12 (2002) (footnote omitted).

This Court finds that the allegations of the First
Amended Complaint, discussed *supra*, are sufficient to state a
plausible claim for promissory estoppel.  Defendant's Motion is
therefore DENIED as to Count VI.

**VII. Common Law Unfair Competition**

Defendant argues that the Court must dismiss Count VII (common law unfair competition) with prejudice because it fails to state a claim and amendment would be futile. [Mem. in Supp. of Motion at 26-27.]

In order to establish a claim of common law unfair competition,

> the plaintiff must establish (1) the "palming off" of defendant's product as plaintiff's product, or (2) "consumer-confusion" between the two products because plaintiff's product had acquired a secondary meaning or because of other reasons, or (3) misappropriation of plaintiff's property or merchandise through misrepresentation or some other form of commercial immorality.

Meridian Mortg., Inc. v. First Hawaiian Bank, 109 Hawai`i 35, 49, 122 P.3d 1133, 1147 (Ct. App. 2005) (citation and quotation marks omitted).

In the instant case, Plaintiff relies on the third form of the action. Plaintiff contends that: Plaintiff was, at least equitably, the owner of the Property by virtue of the parties' sale contract and their subsequent actions; and Defendant misappropriated the Property by continuing to collect mortgage payments from the prior owners and by modifying the mortgage loan. [Mem. in Opp. at 22-23 (citing FAC ¶¶ 66, 10-13, 43.C.).] This Court has ruled that Plaintiff may proceed on some of its claims alleging either that Defendant is liable to Plaintiff for

31

damages incurred as a result of Defendant's failure to complete the sale of the Property to Plaintiff or that Defendant must complete the sale of the Property to Plaintiff.  Plaintiff, however, has not identified any legal authority for its position that, at the time in question, Plaintiff was already the actual or equitable owner of the Property.  Insofar as Plaintiff was not the owner of the Property during the period in question, Plaintiff has not, and cannot, allege a claim for misappropriation of the Property.

The Court therefore GRANTS Defendant's Motion as to Count VII and DISMISSES Count VII WITH PREJUDICE.

**VIII.    Civil Conspiracy and Aiding and Abetting**

Defendant contends that Count IX (civil conspiracy) and Count X (aiding and abetting) fail because they cannot stand alone without a valid underlying claim.  [Mem. in Supp. of Motion at 27-29.]

Defendant is correct that, "[i]n general, Hawaii does not recognize independent causes of action for civil conspiracy or aiding and abetting—such theories of potential liability are derivative of other wrongs."  Long v. Deutsche Bank Nat'l Tr. Co., Civil No. 10-00359 JMS/KSC, 2011 WL 2650219, at *8 (D. Hawai`i July 5, 2011) (citing Weinberg v. Mauch, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995); Chung v. McCabe Hamilton & Renny Co., 109 Haw. 520, 530, 128 P.3d 833, 843 (2006)).  There are,

however, a number of Plaintiff's claims that survive dismissal, and these claims could arguably support claims for civil conspiracy and aiding and abetting, if Plaintiff can make the required supporting allegations.

As to Plaintiff's civil conspiracy claim, this district court has recognized that:

> "'the accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'" <u>Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.</u>, 982 P.2d 853, 881 n. 28 (Haw. 1999) (quoting <u>Duplex Printing Press Co. v. Deering</u>, 254 U.S. 443, 466 (1921)) (alteration in original). . . .
> "A conspiracy is constituted by an agreement . . . No formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." <u>Marino v. United States</u>, 91 F.2d 691, 694 (9th Cir. 1937)[.]

<u>Stanton v. Bank of Am., N.A.</u>, Cv. No. 09-00404 DAE-LEK, 2010 WL 4176375, at *18 (D. Hawai`i Oct. 19, 2010) (some alterations in <u>Stanton</u>).

As to Plaintiff's aiding and abetting claim, the court in <u>Stanton</u> recognized that:

> Hawai`i courts have not explicitly articulated a test for civil aiding and abetting. <u>See</u> <u>Unity House, Inc. v. North Pacific Inv., Inc.</u>, 918 F. Supp. 1384, 1390 & n.5 (D. Haw. 1996) ("even assuming there existed aiding and abetting liability for fraud in Hawaii, Unity House would not survive summary judgment on this claim"); <u>see</u>

also <u>Nakamoto v. Hartley</u>, 758 F. Supp. 1357, 1366
(D. Haw. 1991) ("Hawaii courts have given no
indication that on a fraud claim brought under
Hawaii common law, a defendant may be held liable
for aiding and abetting a fraud . . . .")
(citation omitted). However, the court in
<u>Television Events & Marketing, Inc. v. Amcon</u>
<u>Distributing Co.</u>, 488 F. Supp. 2d 1071 (D. Haw.
2006) rejected an argument that these cases
supported a contention that aiding and abetting a
breach of fiduciary duty was not a viable cause of
action in Hawai`i. <u>Id.</u> at 1076-77. . . .

<u>Id.</u> at *14 (some alterations in <u>Stanton</u>). Further, the court
"agree[d] with <u>Television Events & Marketing, Inc.</u> and f[ound]
the weight of authority in support of a cause of action for civil
aiding and abetting an intentional tort under Hawai`i law as
defined by the Restatement (Second) of Torts § 876 subsections
(b) and (c)." <u>Id.</u> at *15.

The Restatement (Second) of Torts § 876 states, in
pertinent part:

For harm resulting to a third person from the
tortious conduct of another, one is subject to
liability if he
. . . .
(b) knows that the other's conduct
constitutes a breach of duty and gives
substantial assistance or encouragement to
the other so to conduct himself, or
(c) gives substantial assistance to the other
in accomplishing a tortious result and his
own conduct, separately considered,
constitutes a breach of duty to the third
person.

The court in <u>Stanton</u> also noted that California courts have
elaborated on § 876(b) and (c), and that Hawai`i courts often
look to California courts for guidance when there is no Hawai`i

34

precedent.  Thus, the California courts' interpretation of §
876(b) and (c) applied to Plaintiff's aiding and abetting claim
in this case.  <u>Stanton</u>, 2010 WL 4176375, at *15.

> As to the first test for aiding and abetting
> requiring knowledge that the other's alleged
> conduct constituted a breach of duty, the court in
> <u>Casey v. U.S. Bank Nat'l Ass'n</u>, 127 Cal. App. 4th
> 1138, 1144 (2005) found that to satisfy the
> knowledge prong, the defendant must have "actual
> knowledge of the specific primary wrong the
> defendant substantially assisted."  <u>Id.</u> at 406;
> <u>see also</u> <u>Central Bank of Denver, N.A. [v. First
> Interstate Bank of Denver, N.A.]</u>, 511 U.S. 164
> [(1994)] (quoting the Restatement (Second) of
> Torts § 876(b)).

<u>Id.</u> at *16.

By definition, a civil conspiracy claim and an aiding
and abetting claim require the involvement of more than one
person or entity.  Count IX and Count X fail insofar as Plaintiff
has not identified who Defendant allegedly conspired with or
whose actions Defendant aided and abetted.  The Court must
therefore dismiss those claims.

It is, however, possible for Plaintiff to amend these
claims to cure this defect but the Court cautions Plaintiff that,
in addition to alleging who Defendant allegedly conspired with or
whose actions Defendant aided and abetted, Plaintiff must present
sufficient factual allegations to support these claims.  Further,
to the extent these counts are premised on alleged fraud,
Plaintiff must meet the heightened pleading requirements of Rule
9(b).  <u>See</u> <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 765 (9th Cir. 2007)

("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent." (citation and internal quotation marks omitted)); <u>see also</u> <u>Long</u>, 2011 WL 2650219, at *8 ("[T]he allegations in these Counts are wholly conclusory, failing to explain any actions by Defendants that indicate that they aided and abetted each other and/or formed a civil conspiracy regarding the falsification of Plaintiff's income." (citing <u>Swartz</u>)).

Defendant's Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count IX and Count X. The Motion is GRANTED to the extent that the Court DISMISSES Count IX and Count X, and the Motion is DENIED to the extent that the dismissal of Count IX and Count X is WITHOUT PREJUDICE.

## IX. **Punitive Damages**

Finally, this Court notes that it is well recognized that punitive damages are not an independent cause of action, but instead a remedy which is "incidental to a separate cause of action[.]" <u>United States ex rel. Lockyer v. Hawaii Pac. Health</u>, 490 F. Supp. 2d 1062, 1089 (D. Hawai`i 2007) (citing <u>Ross v. Stouffer Hotel Co.</u>, 76 Hawai`i 454, 466, 879 P.2d 1037, 1049 (Haw. 1994)). This Court must therefore dismiss Count XI, and Plaintiff's independent claim for punitive damages cannot be saved by any amendment. The Court GRANTS Defendant's Motion as to Count XI and DISMISSES Count XI WITH PREJUDICE. The Court,

36

however, notes that the dismissal of Count XI does not affect Plaintiff's ability to recover punitive damages as a remedy for any of Plaintiff's claims for which punitive damages are available and Plaintiff can prove that it is entitled to such relief.

## X.  <u>Leave to Amend</u>

Plaintiff is given leave to submit a motion to the magistrate judge that seeks permission to file a Second Amended Complaint.  The proposed Second Amended Complaint must be attached to the motion, and it may include the claims that either were not the subject of the instant Motion or where this Court denied Defendant's Motion: breach of contract, negligence, negligent misrepresentations, promissory estoppel, and tortious interference.  In addition, the Second Amended Complaint may include the following claims which this Court has dismissed without prejudice: fraud/fraudulent misrepresentations, UMOC, civil conspiracy, and aiding and abetting.  Plaintiff is not granted leave to add new parties, claims or theories of liability, and any Second Amended Complaint must address the deficiencies noted in this Order.  Any such motion shall be filed no later than **[insert date]**.  If Plaintiff fails to timely file a motion seeking leave to file an attached Second Amended Complaint, the fraud/fraudulent misrepresentations, UMOC, civil conspiracy, and aiding and abetting claims will be automatically

dismissed with prejudice.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, filed May 27, 2011, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as Count VII (common law unfair competition) and Count XI (punitive damages) are DISMISSED WITH PREJUDICE. The Motion is DENIED as to Count I (negligence), Count IV (negligent misrepresentations), and Count VI (promissory estoppel). The Motion is GRANTED IN PART AND DENIED IN PART as to Count II (fraud/fraudulent misrepresentations), Count V (UMOC), Count IX (civil conspiracy), and Count X (aiding and abetting) insofar as those claims are DISMISSED WITHOUT PREJUDICE.

Plaintiff has until **November 21, 2011** to file a motion seeking permission to file a Second Amended Complaint in accordance with this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 31, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

HELE KU KB, LLC V. BAC HOME LOANS SERVICING, LP, ET AL; CIVIL NO. 11-00183 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT