IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

HELE KU KB, LLC, a Hawai'i )  CIVIL NO. 11-00183 LEK-KSC
limited liability company, )
)
Plaintiff, )
)
vs. )
)
BAC HOME LOANS SERVICING, LP, )
a Texas limited partnership, )
et al., )
)
Defendants. )
_____ )

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 31 2012

at 5 o'clock and 30 min. P M.
SUE BEITIA, CLERK

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING BREACH OF CONTRACT CLAIM**

Before the Court are: Plaintiff Hele Ku KB, LLC's[1] ("Plaintiff" or "Hele Ku") Motion for Partial Summary Judgment ("Plaintiff's Motion"), filed on January 4, 2012; [dkt. no. 85;] Defendant BAC Home Loans Servicing, LP's ("Defendant" or "BAC") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Defendant's Motion"), filed on February 1, 2012; [dkt. no. 107;] and Plaintiff's Counter-Motion for Partial Summary Judgment Regarding Breach of Contract Claim ("Plaintiff's Counter-Motion"), filed on April 3, 2012 [dkt. no. 155]. Defendant filed its memorandum in opposition to Plaintiff's Motion on April 4, 2012. [Dkt. no. 159.] Plaintiff filed its

_____

[1] Hele Ku is a Hawai`i limited liability company.

reply in support of Plaintiff's Motion on April 11, 2012. [Dkt. no. 166.] Plaintiff's Counter-Motion is also its memorandum in opposition to Defendant's Motion. Defendant filed its reply in support of Defendant's Motion on April 11, 2012. [Dkt. no. 168.]

These matters came on for hearing on April 30, 2012. Appearing on behalf of Plaintiff was Steven Chung, Esq., and appearing on behalf of Defendant were Sharon Lovejoy, Esq., and Andrew Lautenbaugh, Esq. Pursuant to this Court's order, [dkt. no. 187,] Plaintiff filed a supplemental declaration and exhibit on May 1, 2012, [dkt. no. 190,] and Defendant filed its supplemental declarations and exhibit on May 3, 2012 [dkt. no. 191]. After careful consideration of the motions, supporting and opposing documents, and the arguments of counsel, Plaintiff's Motion and Plaintiff's Counter-Motion are HEREBY DENIED, and Defendant's Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

Plaintiff filed the instant action on February 28, 2011 in state court. Defendant removed the action on March 21, 2011 based on diversity jurisdiction. [Notice of Removal at 4.]

Plaintiff filed its Second Amended Complaint on February 7, 2012. [Dkt. no. 116.] The Second Amended Complaint alleges the following claims: breach of contract ("Count I"); negligence ("Count II"); fraud/fraudulent misrepresentations

("Count III"); negligent misrepresentations ("Count IV"); and Promissory Estoppel ("Count V").[2]   The Second Amended Complaint prays for the following relief: an order of specific performance requiring Defendant to convey the Property to Plaintiff; actual, special, compensatory, expectation, consequential, general, treble, exemplary and/or punitive damages; attorneys' fees and costs; and any other appropriate relief.[3]

## I.   **Factual Background**

The instant case arises from Plaintiff's attempt to purchase 811 Hele Ku Street, Lahaina, Hawai`i 96761 ("the Property") at a foreclosure auction.

Vincent M. Sampson and Authurina N. Sampson are the owners of the Property.   [Def.'s Revised Concise Statement of Facts in Supp. of Def.'s Motion ("Def.'s CSOF"),[4] filed 4/23/12, Decl. of Authurina N. Sampson (dkt. no. 176-1) ("Sampson Decl.")

---

[2] The Second Amended Complaint alleges a tortious interference claim ("Count VI") against the Doe Defendants, but Plaintiff did not identify any of the Doe Defendants.

[3] Plaintiff also prays for "[i]njunctive relief, prohibiting and/or ordering Defendants to cease and desist from engaging in unfair competition[,]" [Second Amended Complaint at pg. 17,] but the Second Amended Complaint does not include an unfair competition claim.

[4] The term "Defendant's CSOF" refers to five separate filings collectively - docket numbers 172, 173, 174, 176, and 175 (filed under seal).   Defendant filed all of them on April 23, 2012.   Insofar as Defendant's CSOF consists of five filings, the declarations and their supporting exhibits have different docket numbers.

at ¶ 3.]  The Federal National Mortgage Association ("Fannie Mae"
or "FNMA") owns the beneficial interest in the Sampsons' loans.
Defendant is not a current beneficiary or investor in the
Sampsons' loans; Defendant is only the loan servicer.  [Def.'s
CSOF, Decl. of Nicole Bensend (dkt. no. 176-2) ("Bensend Decl.")
at ¶¶ 6-8.]

In June 2009, Mrs. Sampson contacted Defendant to
inquire about a loan modification under the Making Home
Affordable/Home Affordable Modification Program ("HAMP").  On or
around July 27, 2009, she completed a HAMP application over the
phone and was informed that she was approved for a HAMP trial
plan, and that any foreclosure proceedings would be put on hold
as long as the Sampsons made the $2,425.65 payments for the next
three months.  Mrs. Sampson authorized the first payment on the
same date.  [Sampson Decl. at ¶¶ 7-9.]  By August 25, 2009,
however, the Sampsons had not received any documents for the loan
modification.  [Id. at ¶ 11.]  Nicole Bensend, Defendant's
Associate Vice President, Operations Team Lead for Litigation
Management Foreclosure Servicing, states that all the terms of a
written HAMP agreement apply to an orally-approved HAMP
modification trial plan.  [Bensend Decl. at ¶¶ 1, 15.]

Also on August 24, 2009, Defendant directed
Mrs. Sampson to provide additional information in support of
their application, which she did.  Based on the additional

information, Defendant informed Mrs. Sampson that they could make monthly payments of $1,689.50 instead of $2,425.65. Defendant again represented that foreclosure would not occur as long as the Sampsons made the new monthly payments. The Sampsons made the monthly payments from August 2009 to August 2010. [Sampson Decl. at ¶¶ 12-14.] They were never delinquent in their HAMP trial plan payments. [Id. at ¶ 17.]

According to Ms. Bensend, however, Defendant mistakenly failed to cancel the Sampson's first HAMP modification trial plan in one of its databases. Thus, whenever the Sampsons made their $1,689.50 monthly payment, Defendant's system treated it as a partial payment under the first HAMP modification trial plan. [Bensend Decl. at ¶¶ 27, 29.] On November 16, 2009 and January 22, 2010, Defendant sent the Sampsons correspondence referring to the erroneous $2,425.65 monthly payment. [Id. at ¶¶ 30-31, Exhs. 31-32 (dkt. no. 175-14, 175-15).] On May 7, 2010, Defendant sent the Sampsons a letter stating that they had been declined for a permanent HAMP modification because they did not make all of their trial plan payments. Defendant also sent the Sampsons documents for a Fannie Mae modification with monthly payments of $3,727.41. The Fannie Mae documents had to be returned by May 17, 2010. [Bensend Decl. at ¶ 33, Exh. 34 (dkt. no. 175-17).] Mrs. Sampson contacted Defendant on May 14, 2010, and Defendant's agents assured her that the Sampsons had in fact made all

required payments, their HAMP modification application was still pending, and foreclosure would not occur as long as they continued to make their payments. The Sampsons therefore did not go forward with the Fannie Mae modification. [Sampson Decl. at ¶ 22.]

On June 22, 2010, Defendant internally noted that, because it did not receive the Fannie Mae modification documents by the deadline, the Sampsons' forbearance agreement was cancelled. The forbearance plan, however, was still in effect, and could not have been cancelled by Defendant because the Sampsons complied with the second HAMP modification trial plan. [Bensend Decl. at ¶¶ 34, 37.] On July 19, 2010, Defendant sent the Sampsons a letter notifying them of the cancellation of the forbearance agreement. [Id. at ¶ 36, Exh. 37 (dkt. no. 175-20).]

On July 27, 2010, Mrs. Sampson contacted Defendant regarding the status of the permanent modification. Defendant informed her that the documents were being sent to her and assured her that foreclosure would not proceed as long as they made the $1,689.50 payments. When Mrs. Sampson asked about any foreclosure, the agent told her "we are a long way from that." [Sampson Decl. at ¶ 24.] On that same day, Defendant requested that Fannie Mae postpone the foreclosure on the Property for ninety days, but Fannie Mae did not approve the request until September 11, 2010. [Bensend Decl. at ¶¶ 38-39.] Ms. Bensend

states the postponement request "was not communicated to [Defendant's] foreclosure counsel, Routh Crabtree Olsen ('RCO') prior to the sale." [Id. at ¶ 40.]

On August 5, 2010, without knowledge of the Sampsons' forbearance agreement or Defendant's continuance request to Fannie Mae, RCO conducted a nonjudicial foreclosure sale of the Property ("the Sale"). Plaintiff was the highest bidder at the Sale with a bid of $650,000.00. [Def.'s CSOF, Decl. of Derek Wong (dkt. no. 176-3) ("Wong Decl.") at ¶¶ 3-4.] Ms. Bensend states that Plaintiff signed a "Sale Agreement" and submitted a $65,000.00 deposit. [Bensend Decl. at ¶ 42, Exh. 40 (dkt. no. 174-15).] Exhibit 40 contains a provision limiting Plaintiff's recovery to the return of its deposit if title to the Property was not conveyed for any reason other than Plaintiff's failure to perform its obligations under the parties' agreement.[5] [Bensend Decl., Exh. 40.] The Court will refer to this provision as the "Limitation Clause".

On September 7, 2010, Mrs. Sampson contacted Defendant to find out why the Property had been foreclosed. Defendant began an investigation into the matter in late November 2010.

---

[5] The Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice of Sale"), recorded in the State of Hawai`i Bureau of Conveyances on June 9, 2009 as Document Number 2009-087969, included a similar provision. [Def.'s CSOF, Def.'s CSOF, Decl. of Andrew J. Lautenbach (dkt. no. 176-4) ("Lautenbach Decl.") Exh. 44 (dkt. no. 174-19) at 2.]

Defendant determined that the Sale occurred because the Sampsons were incorrectly deemed to be in default due to the failure to pay the correct amount under the HAMP modification trial plan. On December 9, 2010, Defendant requested that the Sale be rescinded, and Fannie Mae approved the request on December 31, 2010. Thus, Defendant has not closed the Sale. [Bensend Decl. at ¶¶ 43-47, Exh. 42 (dkt. no. 175-24).]

RCO recorded a Mortgagee's Affidavit of Foreclosure under Power of Sale ("Foreclosure Affidavit") on August 27, 2010, but they were still unaware that the Sale should not have gone forward. After receiving a letter from the Sampsons' attorney, Mr. Wong contacted Steve Lee, Plaintiff's principal, to advise him that a loan modification was in place at the time of the Sale and that Defendant was investigating the matter. [Wong Decl. at ¶¶ 5-8, Exh. 5 (dkt. no. 172-5).] Mr. Wong continued to correspond with Mr. Lee about the status of the Sale. [Wong Decl. at ¶¶ 9-12, Exhs. 6-9 (dkt. nos. 172-6 to 172-9).] On January 3, 2011, Mr. Wong informed Mr. Lee that he would "escalate" the deed, meaning that he would ask one of Defendant's supervisors about the status of the deed. [Wong Decl. at ¶ 13, Exh. 10 (dkt. no. 172-10).] According to Defendant, Mr. Lee misunderstood and responded that he was glad the deed was going to be issued. [Wong Decl. at ¶ 14, Exh. 11 (dkt. no. 172-11).]

On January 6, 2011, Mr. Wong learned that the Sale was approved for rescission, and he informed Mr. Lee the next day. Mr. Wong told Mr. Lee that he would confirm the rescission with Defendant. Mr. Lee continued to inquire whether the deed was going to be delivered, and Mr. Wong responded that he was still confirming the rescission. [Wong Decl. at ¶¶ 15-18, Exhs. 12-15 (dkt. nos. 173-2 to 173-5).] On January 28, 2011, Mr. Wong informed Mr. Lee that Defendant had confirmed that the Sale would be rescinded and that Plaintiff's deposit would be returned. Mr. Lee continued to demand that Defendant close the sale. [Wong Decl. at ¶¶ 19-20, Exhs. 16-17 (dkt. nos. 173-6, 173-7).] This action followed.

In late April or May 2011, RCO, on Defendant's behalf, tendered a Limited Warranty Deed to Plaintiff. [Wong Decl. at ¶ 22.] Plaintiff refused to accept without certain conditions, and Defendant withdrew its offer on May 25, 2011. On or about November 9, 2011, Defendant offered to return Plaintiff's deposit, plus ten percent interest, but Plaintiff refused. [Id. at ¶¶ 24-25; Lautenbach Decl. at ¶¶ 6-10.]

Plaintiff's recitation of the facts is largely identical. Plaintiff, however, emphasizes that the Notice of Sale included the statement that: "Time is of the essence in this transaction and any delay in performance by Purchaser which prevents the closing from occurring within 30 days after the

auction shall cause Mortgagee to sustain damages in amounts which will be difficult to ascertain." [Lautenbach Decl., Exh. 44 at 2.[6]] Plaintiff also emphasizes that it has been ready, willing, and able to complete the Sale. [Pltf.'s Motion, Decl. of Steven D. Lee ("Lee Decl.") at ¶ 6.]

## I. **Plaintiff's Motion**[7]

Plaintiff's Motion seeks an interpretation of the Limitation Clause. According to Plaintiff, Defendant's position is that the clause gave Defendant the right to cancel the contract "at a whim" and "at any time, without any ramifications." [Mem. in Supp. of Pltf.'s Motion at 3, 5.] Plaintiff emphasizes that, if it had failed to perform its obligations, it would have forfeited its deposit. Thus, during the period in which Defendant was trying to determine whether to close the Sale, Defendant kept Plaintiff's deposit and Plaintiff was obligated to have funds available to pay the full price, in the event that Defendant decided to go forward with the Sale. Plaintiff argues that Hawai`i law imposes a duty of good faith

---

[6] Plaintiff included the Notice of Sale with Plaintiff's Motion as Exhibit A. [Dkt. no. 85-6.]

[7] The Court notes that, although Plaintiff filed Plaintiff's Motion before the filing of the Second Amended Complaint, Plaintiff states that the breach of contract claim in the Second Amended Complaint is identical to the claim in the First Amended Complaint. [Pltf.'s Motion at 2.] On February 8, 2012, this Court issued an EO stating that it would construe Plaintiff's Motion as addressing the Second Amended Complaint. [Dkt. no. 117.]

and fair dealing on every contract and that this duty limits the discretion which Defendant could exercise under the Limitation Clause. [Id. at 5 & n.5.] Thus, Plaintiff's Motion seeks:

> partial summary judgment in favor of HELE KU on the narrow issue of whether the [Limitation] Clause allows BAC to cancel the Contract at its unbridled discretion. Specifically, HELE KU requests a ruling that the [Limitation] Clause permits cancellation of the contract only if performance of the contract becomes objectively impossible for reasons outside BAC's control.

[Id. at 7 (footnote omitted).] Plaintiff's Motion does not seek a ruling on Defendant's argument that, pursuant to Lee v. HSBC Bank USA, 121 Hawai`i 287, 218 P.3d 775 (2009), the Sale was invalid because the Sampsons were not in default at the time of the auction. Plaintiff asserts that discovery is ongoing on this issue. [Id. at 7 n.6.]

Plaintiff points out that Hawai`i courts have long held that the principles of contract law govern an auction of real property. An announcement or advertisement of a public auction is an invitation to bid on the property, and a bid is an offer, which is accepted when the auction hammer drops or there is another signal of acceptance. Plaintiff therefore argues that, assuming the Sampsons were in default at the time of the auction, Defendant entered into a valid an enforceable contract with Plaintiff when Defendant accepted Plaintiff's high bid at the August 5, 2010 foreclosure action. [Id. at 9-10.]

11

Plaintiff argues that, under either Hawai`i law or federal law, summary judgment is appropriate when contract terms are clear and unambiguous, even if the parties disagree as to their meaning. Further, whether a contract is ambiguous, *i.e.* reasonably susceptible to more than one meaning, is a question of law. Plaintiff argues that the interpretation of the contract, including the Limitation Clause, is an issue of law for this Court to decide. [Id. at 10-12.]

Plaintiff argues that Defendant's interpretation of the Limitation Clause would render their agreement illusory because it would impose obligations on Plaintiff while allowing Defendant to avoid its obligations for any reason. Under Hawai`i law, illusory contracts are void because they lack mutuality of obligations. [Id. at 13-14.] Plaintiff's interpretation of the Limitation Clause would mean that Defendant could not cancel the contract on a whim and that there was sufficient consideration to support a contract. This is the preferred interpretation because it would result in a valid contract. [Id. at 15-16.] Under Hawai`i law, when a contract term can be interpreted in at least two different ways, the interpretation that would result in a valid contract is favored over unreasonable interpretations that would render the contract illusory. [Id. at 16-17.] Plaintiff argues that Ninth Circuit case law is consistent with Hawai`i law. [Id. at 18-20.]

12

Plaintiff also argues that its interpretation of the contract is consistent with the general principles of contract interpretation and with public policy. First, any ambiguity in the contract should be construed against Defendant, the party that drafted the contract. Second, Defendant's interpretation is against the public interest because it would chill bidding at foreclosure auctions. Potential purchasers would be reluctant to enter into contracts with lenders with superior bargaining power and that can tie up the purchasers' funds indefinitely without recourse to the purchaser if the lender does not fulfill its obligations. This would lower foreclosure prices, which is clearly against public policy. [Id. at 21-23.]

Plaintiff therefore urges the Court to grant Plaintiff's Motion and find that Defendant's exercise of its discretion under the Limitation Clause is limited by the duty of good faith and fair dealing. [Id. at 23.]

## II. Defendant's Motion[8]

In Defendant's Motion, Defendant first argues that it

---

[8] The Court notes that, although Defendant filed Defendant's Motion before the filing of the Second Amended Complaint, Defendant's counsel submitted a letter stating that Defendant's Motion was prepared to address the Second Amended Complaint. The Court therefore stated that it would construe the portion of Defendant's Motion regarding the fraud/fraudulent misrepresentations claim as addressing the Second Amended Complaint. [EO, filed 2/22/12 (dkt. no. 132).] The February 8, 2012 EO previously stated that the Court would construe the other portions of Defendant's Motion as addressing the Second Amended Complaint.

is entitled to summary judgment because it is merely the servicer of the loan. Thus, it does not have the authority to provide Plaintiff specific performance of the Sale. Defendant therefore argues that Plaintiff's claims against Defendant necessarily fail. [Mem. in Supp. of Def.'s Motion at 18-19.]

Defendant also argues that the Sale was invalid and unenforceable because the Sampsons were not in breach of a condition of their mortgage, which is a requirement for a valid non-judicial foreclosure under power of sale clause in a mortgage. Defendant argues that Hawai`i courts have recently affirmed this rule in two recent cases also brought by Mr. Lee. [Id. at 19-22 (discussing Lee v. HSBC Bank USA, N.A., 121 Hawai`i 287, 218 P.3d 780 (2009); Hiwalani Holdings LLC v. Wells Fargo Bank, N.A., Civil. No. 09-1-1847-09 RAT[9]).] Defendant argues that these cases are dispositive of Plaintiff's claims in the instant case. Just as in Lee and Hiwalani, the Sale was invalid because the Sampsons were not in default at the time of the foreclosure. Defendant argues that a pre-foreclosure sale modification agreement is sufficient to cure a mortgage default. Moreover, there was a valid forbearance agreement in place.

---

[9] The circuit court's Order (1) Denying Plaintiffs' Motion for Summary Judgment, Filed September 3, 2010; and (2) Granting Defendant Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-6 Asset-Backed Certificates, Series 2007-6's Motion for Summary Judgment, Filed September 7, 2010 in Hiwalani is attached to Defendant's CSOF as Exhibit 47 to the Lautenbach Declaration. [Dkt. no. 174-22.]

Defendant argues that it had no right to exercise its power of sale and the auction could not have complied with Haw. Rev. Stat. § 667-5. [Id. at 22-23.] Defendant therefore urges the Court to find that Plaintiff and Defendant did not enter into a contract. [Id. at 25.] Defendant points out that Plaintiff's argument that the agreement was illusory is a concession that no enforceable contract was formed. [Id. at 25 n.108.]

Defendant also argues that, pursuant to the Limitation Clause, Defendant is only required to return Plaintiff's deposit and Plaintiff is precluded from bringing claims against Defendant. [Id. at 25-26.]

Defendant contends that public policy considerations support its position. Defendant argues that Plaintiff's breach of contract claim fails and that there is no evidence that Defendant breached any duty of good faith and fair dealing. Defendant argues that the implied duty of good faith and fair dealing protects the express covenants of the contract, not general public policy interests unrelated to the contract's purpose. Defendant asserts that the covenant of good faith and fair dealing cannot contradict the express terms of the contract and cannot prohibit a party from doing what the terms of the contract expressly permit it to do. Implying a duty to all things reasonably necessary to close the Sale, as Plaintiff contends the covenant of good faith and fair dealing does, would

15

be inconsistent with the Limitation Clause.  Defendant also argues that Plaintiff's refusal to accept its contractually agreed-upon remedy is a breach of Plaintiff's covenant of good faith and fair dealing.  [Id. at 26-28.]

As to Plaintiff's negligence claim, Defendant argues that a seller owes no duty to a bidder at a foreclosure auction. Defendant emphasizes that other courts have held that there is no duty by a seller to a high bidder at a non-judicial foreclosure sale, and that state statutes governing non-judicial foreclosures are intended to cover the entire area, displacing common law remedies.  Defendant therefore urges the Court to find that Plaintiff's negligence claim fails because Defendant did not owe Plaintiff a duty.  [Id. at 28-30.]

As to Plaintiff's fraud/fraudulent misrepresentations claim, Defendant argues that Plaintiff cannot prove the required elements for any of the types of fraud/fraudulent misrepresentations alleged in the Second Amended Complaint, which Defendant characterizes as:

> (1) Defendant's allegedly inducing Plaintiff to bid for and buy the Property when it knew it did not have the legal authority or intention to close the sale; (2) Defendant's post-sale assurances that it would close the sale; (3) Defendant's assertion of its right to cancel and/or rescind the sale for any reason, as provided for in the Notice of Sale and Sale Agreement, and (4) Defendant's post-litigation settlement conduct in tendering a Warranty Deed to Plaintiff.

[Id. at 31.]  As to the first category, Plaintiff has not

presented any evidence that Defendant published the Notice of Sale knowing that the foreclosure sale was not in compliance with Haw. Rev. Stat. §§ 667-5 through 667-10. Any representations that Defendant made were based on the mistaken belief that the Sampsons were in default on their HAMP modification trial plan. Similarly, as to Defendant's post-sale representations, Plaintiff has no evidence that Defendant knew its representations were false. Defendant's representations continued to be based on the mistaken belief that the Sampsons were in default on their HAMP trial plan. RCO was unaware of the forbearance agreement or the HAMP trial plan. Further, Plaintiff was aware of the possibility of rescission of the Sale as early as September 28, 2010 and received notice of the final decision to rescind on January 7, 2011. Defendant therefore argues that Plaintiff could not have justifiably relied on any post-Sale representation that the Sale would close. [Id. at 31-33.]

As to the fraud claim predicated on Defendant's exercise of the right to cancel the sale, Defendant urges the Court to reject Plaintiff's argument that Defendant could only exercise the right to cancel if performance became impossible within thirty days of the date specified for closing. Defendant argues that this is a breach of contract claim improperly pled as a fraud claim. Further, there is no valid breach of contract claim because an illusory promise is insufficient consideration

to form a contract. Plaintiff's fraud claim also fails because Defendant exercised its right to cancel according to the Limitation Clause, which does not contain any time limit. Defendant's interpretation of the Limitation Clause was not a misrepresentation. [Id. at 33-34.]

As to Defendant's post-litigation tender of a Limited Warranty Deed, Defendant argues that this was part of good-faith settlement negotiations during litigation and therefore is inadmissible pursuant to Fed. R. Evid. 408 and the litigation privilege. Thus, it cannot form the basis of Plaintiff's fraud claim. [Id. at 35.] Defendant also argues that Plaintiff's fraud claim fails because Defendant owed no duty to disclose material facts about the underlying loan. [Id. at 37.]

As to Plaintiff's negligent misrepresentation claim, Defendant argues that this claim fails for the same reasons the negligence claim fails - the lack of a duty. Further, Plaintiff has not established that Defendant made any affirmative representations regarding the sale. The acts that Plaintiff relies upon are merely representations by omission; Defendant allegedly failed to discover and disclose information about the Property. Defendant, however, believed its representations to be accurate at the time. [Id. at 38-39.]

Finally, as to Plaintiff's promissory estoppel claim, Defendant argues that the Limitation Clause and Defendant's

September 28, 2010 notice of the potential rescission of the Sale
bar any contention that Defendant promised to close the Sale.  In
light of those facts, it was not reasonably foreseeable that
Plaintiff would rely on a purported promise to close the Sale.
Defendant also argues that enforcing the "promise" is not
necessary to avoid injustice.  In fact, forcing Defendant to
close the Sale would be unjust because the Sampsons were in
compliance with their HAMP modification trial plan and Defendant
entered into a forbearance agreement with them.  [Id. at 40-41.]

Defendant therefore urges the Court to grant summary
judgment in Defendant's favor on all claims.  In the alternative,
Defendant asks the Court to enter whatever partial summary
judgment the Court deems appropriate.  [Id. at 41.]

III. **Plaintiff's Counter-Motion/Opposition to Defendant's Motion**

Plaintiff argues that Lee, 121 Hawai`i 287, 218 P.3d
775, does not apply because the Sampsons were in default on their
Mortgage at the time of the Sale.  Plaintiff urges the Court to
reject Defendant's argument that Lee should be extended to
include situations where the borrower is making payments under a
trial loan modification.  Defendant cites the circuit court's
ruling in Hiwalani as support for this extension of Lee, but
Plaintiff points out that the Intermediate Court of Appeals
("ICA") reversed Hiwalani on appeal.  [Pltf.'s Mem. in Opp. at 2

19

(citing 2012 WL 593098 (Hawai`i Ct. App. Feb. 23, 2012)).[10]]   In
Hiwalani, the ICA held that, in order to establish that the
exercise of a power of sale was void, the lender must produce
documents demonstrating that the default had been cured when the
lender exercised the power of sale.  Plaintiff argues that the
Sampsons were still in default at the time of the Sale.  [Id. at
3.]  As to Defendant's argument that it had the right to cancel
the Sale under the terms of the Notice of Sale, Plaintiff
incorporates its arguments from Plaintiff's Motion.  [Id.]

        Plaintiff argues that Counts II, III, and IV are
alternatives to the breach of contract claim and, if Defendant
had the right to cancel the Sale at its sole discretion,
Plaintiff is entitled to damages under these alternative
theories.  Plaintiff argues that, without actually intending to
consummate the transaction, Defendant published the Notice of
Sale, conducted the auction, and promised to close the Sale.
Defendant simultaneously sent default notices to the Sampsons and
published the Notice of Sale, without actually intending to give
up its right to foreclose.  Plaintiff points out that Defendant
bid on the Property at the auction, but was unsuccessful.
Plaintiff argues that Defendant was engaged in "dual tracking".
[Id. at 3-4.]

_____

        [10] Plaintiff states that it attached the slip opinion of the
ICA's Hiwalani decision to its CSOF, [Pltf.'s Mem. in Opp. at 2,]
but the Westlaw citation is now available.

> Dual-tracking occurs when a delinquent distressed homeowner applies for a loan modification, and their lender simultaneously begins the modification and foreclosure processes. Often times, the borrower is under the impression that they are in line for a mortgage modification only to be hit with an auction notice before their modification is processed.

[Id. at 4 (quoting "California Legislation Would End Dual-Track Foreclosures," by Michael Kraus, dated April 27, 2011).[11]] Plaintiff argues that Defendant's conduct was negligent and/or fraudulent and that Plaintiff reasonably relied on the Notice of Sale and other representations that Defendant made. Plaintiff incurred costs to attend the auction and to secure financing to purchase the Property. [Id.]

Plaintiff argues that, under the terms of the Sampsons' Mortgage, once they defaulted, the mortgagee could foreclose at any time until the default was cured, and the only cure is to pay all amounts owed in full at that time. [Id. at 5 (citing Mortgage at ¶¶ 12, 19, 22).[12]] Plaintiff therefore argues that any § 667-5 sale of the Property while the Sampsons were in default would be valid. [Id. at 5-6.] Plaintiff emphasizes that Ms. Bensend, Defendant's Fed. R. Civ. P. 30(b)(6) representative,

---

[11] The Kraus article is attached to Plaintiff's Responsive Concise Statement regarding Defendant's Motion ("Plaintiff's Responsive CSOF") as Exhibit L to the Declaration of Steven K.S. Chung ("Responsive Chung Decl."). [Dkt. no. 156-11.]

[12] The Sampsons' Mortgage is Exhibit 18 to the Bensend Declaration. [Dkt. no. 173-8.]

testified during her deposition that the Sampsons never cured the entire arrearage on their existing loan and there was no permanent modification prior to the Sale. [Id. at 6-7 (quoting Responsive Chung Decl., Exh. B (Excerpts of 2/3/12 Nicole Bensend Depo. Trans.) (dtk. no. 156-7) ("Bensend Depo.") at 51-52, 53).]

Ms. Bensend also acknowledged that there is no written documentation of the forbearance agreement between Defendant and the Sampsons. Ms. Bensend recognized that her testimony regarding the loan prior to the Sale was based on her review of Defendant's AS 400 System and Loss Mitigation System. [Chung Decl., Bensend Depo. at 99, 16-20.] The entry dated August 4, 2009, the date of the purported oral forbearance agreement, describes a conversation between Mrs. Sampson and Defendant's employee, Mark Brown. Plaintiff argues that the entry does not contain anything that could be construed as a forbearance agreement. [Id. at 8 (citing Bensend Decl., Exh. 27 (dkt. no. 174-2)).] Further, Plaintiff emphasizes that the entry for August 24, 2009, the date of the purported forbearance agreement associated with the second HAMP modification trial plan, also does not contain anything indicating that Defendant entered into a forbearance agreement. [Id. at 8-9 (citing Bensend Decl., Exh. 29 (dkt. no. 174-4)).] Plaintiff argues that, even if there were a forbearance agreement, it would not cure the default under the terms of the Mortgage unless the forbearance agreement resulted

22

in a permanent modification, and no permanent modification was ever offered to the Sampsons.  [Id. at 9-12 (citing Chung Decl., Bensend Depo. at 54, 101-03, 79-81).]

Plaintiff asserts that Defendant made numerous representations that it would close the Sale: on August 18, 2010, RCO sent Mr. Lee an email stating that it had sent the deed; on September 22, 2010, RCO informed Mr. Lee that the Affidavit had been filed and the deed was forthcoming; and also on that date, RCO sent Mr. Lee an email stating that Defendant was still working on the deed.  [Id. at 13 (citing Pltf.'s Responsive Concise Statement Regarding Def.'s Motion, filed 4/3/12 (dkt. no. 156) ("Pltf.'s Responsive CSOF"), Decl. of Steven Lee ("Responsive Lee Decl.") at ¶¶ 3-5, Exhs. H, I).]  Mr. Lee continued to send inquiries about the status of the Sale, emphasizing that he was incurring significant financing expenses to reserve the funds to purchase the Property.  Defendant either ignored these inquiries or gave responses that indicated the Sale was expected to move forward.  [Id. at 13-14 (citing Wong Decl., Exh. 16 (dkt. no. 173-6); Responsive Lee Decl. at ¶ 6).]  One of these was the email that Mr. Wong sent stating that he had "asked [his] office to escalate the deed."  [Id. at 14 (quoting Wong Decl., Exh. 16 at 3).]

Plaintiff states that, even after the January 28, 2011 notification that Defendant was rescinding the Sale, Defendant's

conduct was inconsistent with the rescission. Defendant did not return Plaintiff's deposit, and Defendant delivered the deed to an escrow company. [Id. (citing Wong Decl. at ¶ 22; Responsive Lee Decl. at ¶¶ 8-9, Exh. K (dkt. no. 157-4)).] Plaintiff states that it has incurred substantial costs as a result of Defendant's conduct, including travel costs to attend the auction in Lahaina, and a $4,850.00 per month charge for several months to preserve the loan commitment for the purchase price. [Id. (citing Responsive Lee Decl., Exh. M (dkt. no. 156-4)).] Plaintiff argues that it is entitled to summary judgment on Count I (breach of contract) for the reasons stated in Plaintiff's Motion and because Lee requires a cure of the default to render a sale void. [Id. at 15-19.]

As to Defendant's argument that it has no liability because it is merely a servicer, Plaintiff argues that, under Hawai`i law, a seller's inability to convey title does not relieve it of its contractual liability to the purchaser. Plaintiff argues that Defendant represented that it was the mortgagee and had the right to sell the Property and the fact that those representations were false does not relieve Defendant from liability for breach of contract. [Id. at 22-24.]

Plaintiff urges the Court to grant summary judgment in its favor on Count I. In the alternative, the Court should deny Defendant's Motion as to Count I because there are genuine issues

of material fact as to whether the Sampsons were in default at the time of the Sale. [Id. at 24.]

As to Plaintiff's alternative claims that Defendant negligently and/or fraudulently induced Plaintiff to enter into an illusory contract, Plaintiff emphasizes that the Sampsons had not cured their default as of the date of the Sale. [Id. at 24-25.] As to the negligent misrepresentation claim, Plaintiff emphasizes that Hawai`i law imposes a duty to disclose information if it is necessary to correct misleading affirmative representations. Finally, as to negligence and fraud, Plaintiff argues that the evidence of Defendant's dual-tracking could support a jury verdict on those claims. [Id. at 27-28.]

Plaintiff therefore urges the Court to grant Plaintiff's Counter-motion and deny Defendant's Motion. [Id. at 28-29.]

## IV. **Defendant's Other Filings**

Defendant's memorandum in opposition to Plaintiff's Motion largely reiterates the arguments in Defendant's Motion, so the Court will not repeat them here.

In Defendant's reply in support of Defendant's Motion ("Defendant's Reply"), Defendant emphasizes that it has no ownership interest in the Property at issue in this case, and it argues that it does not have the authority to provide the relief that Plaintiff seeks. Defendant argues that there is no triable

25

issue of fact on the issue whether the Sampsons were in default. The terms of the Sampsons' Mortgage did not require payment of the full amount owed to cure default. [Def.'s Reply at 4-5.] Defendant also argues that the ICA's opinion in Hiwalani "left open the possibility that a pre-auction agreement is sufficient to cure a borrower's default." [Id. at 5.] Defendant emphasizes that, although the borrower in Lee cured their full arrearage prior to the foreclosure, nothing in the opinion indicated that was a requirement to void a foreclosure sale. Defendant also points out that courts have held that a forbearance agreement is sufficient to void a sale; a permanent modification prior to the sale is not required. [Id. at 5-6.] Defendant further contends that Plaintiff is taking Ms. Bensend's deposition testimony out of context; she testified that, in this case, the default was cured because the Sampsons were in compliance with the second HAMP modification trial plan and there was a forbearance agreement in effect. [Id. at 6-7 (quoting Def.'s Reply, Decl. of Andrew J. Lautenbach in Supp. of Def.'s Reply ("Lautenbach Reply Decl."), Exh. A (dkt. no. 168-3) (Excerpts of Bensend 2/3/12 Depo. Trans.) ("Bensend Depo. Trans.") at 51-54).] Defendant emphasizes that a written forbearance agreement was not required and that the declarations of Ms. Bensend and Mrs. Sampson are sufficient to establish the existence of the forbearance

26

agreement.  [Id. at 8-9 (citing Lautenbaugh Reply Decl., Bensend
Depo. Trans. at 99-100).]

Defendant reiterates that case law, including Lee,
overwhelmingly supports Defendant's position, and Defendant
argues that the ICA's decision in Hiwalani does not impact
Defendant's entitlement to summary judgment.  [Id. at 10-12.]
Further, even if there is a valid contract, the Limitation Clause
limits Defendant's liability to a return of Plaintiff's deposit,
with interest.  [Id. at 13-14.]

Defendant argues that Plaintiff's tort claims fail
because Plaintiff cannot establish that Defendant owed Plaintiff
an independent duty that transcended the breach of contract.
[Id. at 14.]  Defendant reiterates that it owed Plaintiff no duty
which would support a negligence claim.  As to the fraud claim,
Defendant urges the Court to reject Plaintiff's dual-tracking
argument because there is no evidence that, "Defendant, at the
time it began the process of the foreclosure sale, had designs to
really keep the property for itself."  [Id. at 15-16.]  As to
negligent misrepresentation and promissory estoppel, Defendant
reiterates its earlier arguments and notes that Plaintiff has not
responded to those arguments.  Defendant asserts that Plaintiff
has conceded that Defendant is entitled to summary judgment on
those claims.  [Id. at 16-17.]

Defendant therefore urges the Court to grant summary judgment in its favor on all claims.  [Id. at 17.]

## V.   **Plaintiff's Reply**

In Plaintiff's reply in support of Plaintiff's Motion ("Plaintiff's Reply"), Plaintiff reiterates the arguments it raised previously.  In addition, Plaintiff requests the entry of final judgment pursuant to Fed. R. Civ. P. 54(b)[13] on the pending motions.  If the Court rules that the contract is enforceable, the alternative fraud and negligence claims would be moot.  If the Court rules that the contract is not enforceable, a trial on the fraud and negligence claims will be required.  Plaintiff argues that the Court cannot defer ruling on the pending motions because forcing Plaintiff to proceed to trial on the breach of contract claim and the alternative claims will create jury confusion.  [Pltf.'s Reply at 10-11.]

---

[13] Rule 54(b) states:
> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

## DISCUSSION

### I.   Count I - Breach of Contract

At the outset, this Court must first determine what constitutes the contract for the sale of the Property.  In an auction, a contract is formed when the auctioneer indicates acceptance of the winning bid.  Kalama v. JP Morgan Chase Bank, Civil No. 10-00278 JMS/KSC, 2011 WL 5879432, at *4 (D. Hawai`i Nov. 22, 2011) (citing Terr. of Hawaii v. Branco, 42 Haw. 304, 316 (Haw. Terr. 1958) ("It is elementary in the law of contracts that at an auction an enforceable contract is formed upon the fall of the hammer."); Lee v. HSBC Bank USA, 121 Haw. 287, 295, 218 P.3d 775, 783 (2009) (acknowledging the principle in Branco where an auction is conducted under Hawaii Revised Statutes ("HRS") § 667-5)).  In the instant case, it is undisputed that Plaintiff made the highest bid at the foreclosure sale of the Property and that Defendant accepted his bid.  It is also undisputed that there is no single document, signed by Plaintiff and Defendant, containing the terms of the agreement.  Thus, the Court must determine what document, or documents, evidence the terms of their agreement regarding the Sale of the Property.

Plaintiff contends that the Notice of Sale sets forth the terms of the agreement.  [Pltf.'s Submission Pursuant to the Court's Request, Dated May 1, 2012 (Doc. 187), filed 5/1/12 (dkt. no. 190), Decl. of Steven D. Lee, at ¶ 9; Lautenbach Decl.,

29

Exh. 44 (Notice of Sale).] Defendant contends that the following documents constitute the parties' written agreement: the Notice of Sale; Exhibit 40 from Defendant's CSOF; the Environmental Disclosure Statement; the Vesting Instructions; the Escrow Information; the Receipt; and Plaintiff's check.[14] [Def.'s Response to Pltf.'s Submission of Documents Pursuant to Court's Request for Further Information in Support of Def.'s Motion and in Opp. to Pltf.'s Motion, filed 5/3/12 (dkt. no. 191) ("Def.'s 5/3/12 Submission"), at 3.]

The Court agrees with the parties that the Notice of Sale sets forth terms of the parties' agreement, and the Court notes that it is signed by Defendant, by and through its counsel. Exhibit 40 from Defendant's CSOF, the Environmental Hazard Disclosure Statement, the Vesting Instructions, the Escrow Information, and the Receipt are all documents that Mr. Lee signed on behalf of Plaintiff on the date of the foreclosure sale. These documents also set forth terms of the parties' agreement. Finally, Mr. Lee signed the deposit check, which bears the date of the foreclosure sale, but the check does not set forth any terms of the parties' agreement.

--------

[14] The Environmental Hazard Disclosure Statement, the Vesting Instructions, the Escrow Information, and the Receipt are attached to Defendant's 5/3/12 Submission as part of Exhibit A to the Declaration of Derek Wong Pursuant to Court Order to File Supplemental Documents. [Dkt. no. 191-3 at 8-11.] Plaintiff's check is the first page of Exhibit A, filed under seal. [Dkt. no. 194.]

The Court therefore FINDS that the following documents constitute the entire agreement between Plaintiff and Defendant regarding the sale of the Property: the Notice of Sale; Exhibit 40 from Defendant's CSOF; the Environmental Hazard Disclosure Statement; the Vesting Instructions; the Escrow Information; and the Receipt. The Court will refer to these documents collectively as the "Agreement of Sale". The Court now turns to the merits of Plaintiff's claim that Defendant breached the Agreement of Sale.

### A. Forbearance Agreement

Defendant first argues that any agreement that it had with Plaintiff is void because Defendant did not have authority to sell the Property in light of its forbearance agreement with the Sampsons. In order for the forbearance agreement to void the Sale, however, it must satisfy Hawaii's statute of frauds, which states:

> No action shall be brought and maintained in any of the following cases:
>
> . . . .
>
> (4) Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;
>
> . . . .
>
> unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person

thereunto by the party in writing lawfully
authorized. . . .

Haw. Rev. Stat. § 656-1. The Sampsons' Mortgage was an agreement concerning the transfer of an interest in land, and therefore the Mortgage was subject to the statute of frauds. The agreement in which Defendant agreed not to exercise its right under the Sampsons' Mortgage to foreclose in light of their default and to allow the Sampsons to make lower monthly mortgage payments, effectively extending the term of their loan, is also an agreement concerning a further transfer of interest in land. Thus, the forbearance agreement is subject to the statute of frauds. Cf. Eckerle v. Deutsche Bank Nat'l Trust, Civil No. 10-00474 SOM/BMK, 2011 WL 4971128, at *3-4 (D. Hawai`i Oct. 18, 2011) (granting summary judgment to lender on breach of contract claim where the plaintiff did not produce any writing evidencing the alleged loan modification agreement).

It is undisputed that there is no written forbearance agreement between Defendant and the Sampsons. Defendant argues that its loss mitigation notes provide written evidence of the forbearance agreement with the Sampsons. The Bensend Declaration states that Defendant entered into the forbearance agreement regarding the second HAMP modification trial plan on August 24, 2009 and that Defendant's loss mitigation notes memorialize this action. [Bensend Decl. at ¶ 26.]

The comments section of Defendant's loss mitigation notes for August 24, 2009 states: "Auth Authurina Sampson ci stated had re-applied for MHA 08/04/09 - wom was locked from 06/03/09. Sent l/n to TML to unlock wom. Updated LMF - ran wom - MHA trial payment $1689.50 Per TML ok to change codes to 4 & 2 to make first trial pmt. Locked wom." [Bensend Decl., Exh. 29 (dkt. no. 174-4).] Ms. Bensend states the removal of the 4 & 2 code "meant that the property would be placed off foreclosure status." [Bensend Decl. at ¶ 26.] Nothing in the comments, however, evidences Defendant's agreement that it would not foreclose on the Property as long as the Sampsons complied with the second HAMP modification trial plan. Further, the August 24, 2009 loss mitigation notes are not signed by either Defendant or the Sampsons.

Defendant also presented Defendant's Notice to the Sampsons dated July 19, 2010. [Id., Exh. 37 (dkt. no. 174-12).] It states, in pertinent part:

IMPORTANT MESSAGE ABOUT YOUR LOAN

We mutually agreed upon a Special Forbearance for the account listed above to allow you some additional time to make your past due payments. Our records show that we have not received the required payment from you. As a result, BAC Home Loans Servicing, LP must cancel the Special Forbearance effective immediately.

Unfortunately, we have to cancel the Special Forbearance because the required payments have not been received. The cancellation is effective immediately.

33

WHAT THIS MEANS TO YOU

> At this time, BAC Home Loans Servicing, LP will
> seek full payment of all amounts that are due on
> your loan, and may take other action as is
> permitted by law to protect its interest in the
> property. If foreclosure proceedings have begun
> prior to the Special Forbearance agreement, those
> proceedings will now continue.

[Id.] Exhibit 37 does acknowledge the existence of a forbearance agreement between the Sampsons and Defendant, but it does not set forth the essential terms of the agreement. Thus, it does not constitute a writing sufficient to satisfy the statute of frauds. See Eckerle, 2011 WL 4971128, at *4 ("No factfinder could find a breach of any contract term if none of the terms themselves were certain. Plaintiffs produce no evidence as to a modification lowering the principal balance, the monthly payment amount, the term of the loan, the interest rate, or any other loan provision. Instead, they appear to think that they may enforce an agreement whose specific terms they do not even allege. No law supports this position.").

Notwithstanding the statute of frauds and its requirements, Defendant argues that a writing evidencing the forbearance agreement is not required because nothing in Lee, or the cases cited therein, requires a writing. In Lee, the Hawai`i Supreme Court held that "an agreement created at a foreclosure sale conducted pursuant to HRS section 667-5 is void and unenforceable where the foreclosure sale is invalid under the

34

statute and that the high bidder at such a sale is entitled only
to return of his or her downpayment plus accrued interest." 121
Hawai`i at 296, 218 P.3d at 784.  In Lee, the foreclosure sale
was void because, at the time of the sale, the homeowners "were
no longer in default and, thus, were no longer in breach of the a
condition of the mortgage.  Without such breach, Defendant could
not invoke the mortgage's power of sale clause." Id. at 291, 218
P.3d at 779.

In holding that the sale was void, the Hawai`i Supreme
Court examined relevant case law from other jurisdictions:
Residential Capital, LLC v. Cal-Western Reconveyance Corp., 134
Cal. Rptr. 2d 162 (Ct. App. 2003); Staffordshire Investments,
Inc. v. Cal-Western Reconveyance Corp., 149 P.3d 150 (Or. 2006);
and Taylor v. Just, 59 P.3d 308 (Idaho 2002).  In each of these
cases, the appellate court also held that the foreclosure sale
which the plaintiff sought to enforce was void.  Residential
Capital, 134 Cal. Rptr. 2d at 174; Staffordshire Invs., 149 P.3d
at 158; Taylor, 59 P.3d at 312.

Neither Lee nor the cases cited therein, however,
support Defendant's position that an oral forbearance agreement
with the homeowner renders a subsequent foreclosure sale void.
Staffordshire Investments and Taylor both involved a written
forbearance agreement.  Staffordshire Invs., 149 P.3d at 152 ("On
December 15, Rainey and defendant entered into a new forbearance

35

agreement and, in accordance with that agreement, defendant told
Rainey that the December 17 sale would be postponed."); id. at
154 (quoting relevant provisions of the forbearance agreement);
Taylor, 59 P.3d at 310 ("On July 17, 2001, the Rushes and
Fairbanks Capital executed a contract entitled 'Forbearance
Agreement' (Agreement) which addressed the Rushes' default. . . .
The Agreement provided that if the Rushes made the payments as
modified, Fairbanks Capital would not proceed with the
foreclosure."). Lee and Residential Capital each involved
actions by the homeowners which cured the default and reinstated
the original loan. Lee, 121 Hawai`i at 288, 218 P.3d at 776 (the
homeowners paid the amount stated on "a reinstatement quote to
bring their payments on the loan current" and the loan servicer
accepted the payment, "as indicated by its internal system noting
that the Muchmores' loan was reinstated"); Residential Capital,
134 Cal. Rptr. at 811 ("HomeComings negotiated a repayment plan
with Arvizus, which cured the default and reinstated the loan.").
Thus, nothing in Lee or the cases cited therein allows this Court
to rule that Defendant's oral forbearance agreement, which was
not accompanied by either the Sampsons' satisfaction of their
arrearage or an agreement as to how the arrearage would be
satisfied, renders the Sale of the Property to Plaintiff void.

The Court therefore FINDS that Defendant has failed to
present a writing evidencing the forbearance agreement with the

36

Sampsons, and the Court CONCLUDES that the oral forbearance agreement is unenforceable. The Court further FINDS that there was a valid agreement between Plaintiff and Defendant for the sale of the Property. Insofar as the Agreement of Sale is valid, Defendant is not entitled to judgment as a matter of law as to Count I. See Fed. R. Civ. P. 56(a) (stating that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). The Court DENIES Defendant's Motion to the extent that the motion seeks a ruling that Defendant is not liable to Plaintiff under Count I. See infra Section I.C. regarding the available relief under Count I.

**B.   Limitation Clause**

Defendant next argues that, even if there was an enforceable agreement, Plaintiff's recovery is limited to the return of Plaintiff's deposit, plus interest. The Limitation Clause states:

> If title is not conveyed to Purchaser for any reason, other than Purchaser's own failure to perform, the Mortgagee's sole responsibility shall be to return the Bid funds tendered by Purchaser and the Purchaser shall have no further recourse against the Mortgagee, the agents, attorneys, services and auctioneers.

[Bensend Decl., Exh. 40.] Mr. Lee, as Plaintiff's manager, agreed to this provision when he entered into the Agreement of Sale, as evidenced by his signing of the receipt and his tender

37

of the deposit, or "Bid funds". The Limitation Clause, however, does not give Defendant the unfettered right to cancel the sale for any and every reason under the sun. Under Hawai`i law, there is a covenant of good faith and fair dealing implied in all contracts. Simmons v. Puu, 105 Hawai`i 112, 120, 94 P.3d 667, 675 (2004) (citing Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawai`i 120, 131, 920 P.2d 334, 345 (1996)). Thus, as long as Defendant's cancellation of the sale complied with the implied covenant of good faith and fair dealing, the Limitation Clause applies, and Plaintiff's remedy would be limited to the return of its deposit, plus accrued interest pursuant to Lee, 121 Hawai`i at 296, 218 P.3d at 784. The implied covenant of good faith and fair dealing, however, does not extend as Plaintiff suggests – it does not limit Defendant to cancellation only if the performance of the Agreement of Sale became objectively impossible for reasons beyond its control.

Having considered all of the evidence before it, this Court FINDS that there is a genuine issue of material fact as to whether, under the circumstances of this case, including what Defendant knew or reasonably should have known about the Sampsons' loan, Defendant's cancellation of the Agreement of Sale with Plaintiff violated the implied covenant of good faith and fair dealing. Insofar as there is a genuine issue of material fact, summary judgment is not appropriate. Plaintiff's Motion is

38

therefore DENIED, and Plaintiff's Counter-Motion is also DENIED
to the extent that it seeks summary judgment as to Count I.

### C. **Plaintiff's Remedy**

The Second Amended Complaint seeks, *inter alia*, "[a]n
order of specific performance, requiring [Defendant] to do all
things necessary to convey the Property to [Plaintiff]." [Second
Amended Complaint at pg. 16.] Defendant argues that this Court
cannot order it to provide Plaintiff the requested relief.
Defendant states that Fannie Mae owns the beneficial interest in
the Sampsons' loans. Defendant is not a current beneficiary or
investor in the Sampsons' loans; Defendant is only the loan
servicer. [Bensend Decl. at ¶¶ 6-8.] Plaintiff has not
presented any evidence to contest this.

The Court therefore FINDS that Defendant is not capable
of granting Plaintiff specific performance by conveying the
Property to Plaintiff. The Court therefore GRANTS Defendant's
Motion as to Plaintiff's request for specific performance.
Plaintiff may pursue its request for damages, attorneys' fees and
costs, and any other appropriate relief against Defendant for
Count I.

## II. **Remaining Claims**

Plaintiff has expressly stated that it pled Counts II,
III, and IV, as alternatives to Count I. [Mem. in Opp. at 3 ("As
alternatives to the breach of contract claim, the Second Amended

Complaint includes claims for negligence (Count II), fraud and/or fraudulent misrepresentation (Count III), and negligent misrepresentation (Count IV).").] Plaintiff has also stated that a ruling that the Agreement of Sale is enforceable will render the alternate claims moot. [Pltf.'s Reply at 10-11 ("This Court's ruling on the enforceability of the Contract for the sale of the subject Property will affect all of the other claims which are raised in the Second Amended Complaint. For instance, a ruling that the Contract is enforceable would make the alternative issues of whether Defendant committed negligence or fraud moot.").] In light of Plaintiff's representations, this Court FINDS that Count II (negligence), Count III (fraud/fraudulent misrepresentation), and Count IV (negligent misrepresentation) are moot and DISMISSES those counts.

Plaintiff's motion papers did not specifically identify Count V (promissory estoppel) as an alternative to Count I. Based on the nature of a breach of contract claim and the nature of a promissory estoppel claim, and in light of the allegations in the Second Amended Complaint, this Court also FINDS that Count V is an alternative claim to Count I.

> To prevail on a breach of contract claim, a plaintiff must generally establish that a contract exists, the defendant failed to perform as required under the contract, and that the defendant's failure to perform caused the plaintiff damages. See Wyndham Vacation Resorts, Inc. v. Architects Haw. Ltd., Grp. Pac. (Haw.), Inc., 703 F. Supp. 2d 1051, 1062 (D. Haw. 2010)

(citing <u>Stanford Carr Dev. Corp. v. Unity House, Inc.</u>, 111 Haw. 286, 303-04, 141 P.3d 459, 476-77 (2006)). . . .

<u>Kalama</u>, 2011 WL 5879432, at *4.

> [T]he four elements of promissory estoppel are:
>
> > (1) There must be a promise;
> >
> > (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability);
> >
> > (3) The promisee does in fact rely upon the promisor's promise; and
> >
> > (4) Enforcement of the promise is necessary to avoid injustice.
>
> > <u>In re Herrick</u>, 82 Hawai`i [329,] 337-38, 922 P.2d [942,] 950-51 [(1996)] (quoting 4 R. Lord, A Treatise on the Law of Contracts by Samuel Williston § 8:5, at 85-95 (4th ed. 1992)). The "essence" of promissory estoppel is "detrimental reliance on a promise." <u>Ravelo [v. Cnty. of Hawai`i]</u>, 66 Haw. [194,] 199, 658 P.2d [883,] 887 [(1983)].

<u>Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.</u>, 100 Hawai`i 149, 164-65, 58 P.3d 1196, 1211-12 (2002) (footnote omitted).

Further, Count V alleges that Defendant "is estopped from avoiding its obligation to sell the Property to [Plaintiff] for the Purchase Price" and, "[a]lternatively and/or in addition, [Defendant] is estopped from avoiding legal liability to [Plaintiff] for breach of contract." [Second Amended Complaint at ¶¶ 50-51.] In light of the related elements of a breach of contract claim and a promissory estoppel claim, and in light of

41

Plaintiff's allegations in Count V, this Court FINDS that Count V is an alternative claim for relief to Count I. This Court's ruling that the Agreement of Sale is valid and enforceable and that there are triable issues as to Count I renders Count V moot. This Court therefore DISMISSES Count V.

Insofar as this Court has dismissed Counts II, III, IV, and V as moot, Defendant's Motion and Plaintiff's Counter-motion are DENIED AS MOOT as to Counts II, III, IV, and V.

### CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Partial Summary Judgment, filed January 4, 2012, Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, filed February 1, 2012, and Plaintiff's Counter-motion for Partial Summary Judgment Regarding Breach of Contract Claim, filed April 3, 2012, are HEREBY DENIED to the extent that each motion seeks a ruling as to liability for Count I (breach of contract). The Court, however, GRANTS Defendant's Motion as to Plaintiff's request for specific performance as a remedy for Count I.

The Court HEREBY DISMISSES AS MOOT Count II (negligence), Count III (fraud/fraudulent misrepresentation), Count IV (negligent misrepresentation), and Count V (promissory estoppel). Defendant's Motion and Plaintiff's Counter-motion are therefore DENIED AS MOOT as to Counts II, III, IV, and V.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2012.


_/s/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge


HELE KU KB, LLC V. BAC HOME LOANS SERVICING, LP, ET AL; CIVIL NO. 11-00183 LEK-KSC; ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING BREACH OF CONTRACT CLAIM